MAK

#400

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JUAN TOMAS CRUZ**<br>**189 East Roosevelt Boulevard**<br>**Philadelphia, PA 19120**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**G & G FUNDING CORPORATION**<br>**601 Susquehanna Avenue**<br>**Philadelphia, PA 19122**<br><br>**and**<br><br>**CARLOS GUZMAN**<br>**100 11th Avenue, Apt. 6A**<br>**New York, New York, 10011**<br><br>**and**<br><br>**BRANDYWINE ABSTRACT COMPANY, LP**<br>**615 Old Lancaster Road**<br>**Bryn Mawr, PA 19010**<br><br>**and**<br><br>**MAUREEN REILLY MONTANI**<br>**615 Old Lancaster Road**<br>**Bryn Mawr, PA 19010**<br><br>**Defendants** | **CIVIL ACTION**<br><br>**NO.** 20 1220<br><br>FILED<br>MAR 02 2020<br>KATE BARKMAN, Clerk<br>By__________Dep. Clerk |

**NOTICE OF REMOVAL**

Please take notice that Defendants, G & G Funding Corporation ("G&G") and Carlos Guzman ("Guzman"), hereby file their Notice of Removal of an action pending in the Commonwealth of Pennsylvania, Court of Common Pleas of Philadelphia County, No.

200102908, styled Juan Tomas Cruz v. G & G Funding Corporation and Carlos Guzman, to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1332 and 1446, and state in support as follows:

**Statement of the Case**

1. Plaintiff Juan Tomas Cruz ("Plaintiff") commenced this action on January 24, 2020, by filing a Complaint naming G&G, Guzman, Brandywine Abstract Company, LP ("Brandywine"), and Maureen Reilly Montani ("Montani") as defendants (the "Complaint").

2. On February 26, 2020, Plaintiff filed an Order to Discontinue this action as to Brandywine and Montani, without prejudice. *See* Exhibit "A."

3. Plaintiff allegedly attempted service of the Complaint on G&G and filed an "Affidavit of Non-Service" after the service attempt was unsuccessful.

4. Plaintiff asserts that Guzman was served with the Complaint via certified mail on February 1, 2020.

5. According to the state court docket, G&G has not been served with the Complaint.

6. All process, pleadings and orders which have been filed in this case are attached hereto as Exhibit "B."

7. In lieu of filing any papers in state court, and in accordance with 28 U.S.C. § 1446(b), G&G and Guzman timely filed this Notice of Removal within 30 days of Guzman receiving a copy of the initial pleading and related documents.

**Diversity Jurisdiction Under 28 U.S.C. § 1332(a)**

8. With respect to the Complaint, this Court has original jurisdiction of this action under the provisions of 28 U.S.C. § 1332, and the action may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. 1441, in that it is a civil action in which the amount in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9. Although the Complaint does not explicitly state a dollar amount in controversy, the Complaint seeks a declaratory judgment that Plaintiff is the true and rightful owner of the Property located at 189 East Roosevelt Boulevard, Philadelphia, Pennsylvania 19120 (the "Property"), and Plaintiff avers that "[in 2017], the City of Philadelphia [Office of Property Assessment] assessed the Property's market value to be $139,200.00," an amount in excess of $75,000.00. *See* Complaint at ¶ 102.

10. In 2020, the City of Philadelphia Office of Property Assessment assessed the Property's market value to be $104,100.00.

11. In all events, both assessments of the value of the Property performed by the City of Philadelphia Office of Property Assessment significantly exceed 28 U.S.C. § 1332(a)'s $75,000.00 jurisdictional threshold, and therefore the amount in controversy in this action exceeds the sum of $75,000.

12. Furthermore, complete diversity exists.

13. Plaintiff is a citizen of Pennsylvania. *See* Complaint at ¶ 1.

14. G&G is incorporated in Delaware and has a principal place of business in Bergen County, New Jersey.

15. Guzman is a citizen of New Jersey, although the Complaint inaccurately states he is a citizen of New York. *See* Complaint at ¶ 3.

16. Diversity jurisdiction exists in this action regardless of whether Guzman is a citizen of New Jersey or New York, since no other party in this action is a citizen of New York or New Jersey.

17. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446(a) because the United States District Court for the Eastern District of Pennsylvania is the federal district embracing the Court of Common Pleas, First Judicial District, Philadelphia, Pennsylvania, where the state court action was originally filed.

18. By notice of this removal, Defendants G&G and Guzman do not waive any objections they may have as to service, jurisdiction or venue, or any other defense or objections they may have to this action.

19. Defendants G&G and Guzman intend no admission of fact, law or liability by this Notice, and expressly reserve all procedural and legal rights and defenses they may have.

20. Thus, Defendants G&G and Guzman respectfully request that the United States District Court for the Eastern District of Pennsylvania assume jurisdiction of this case and issue such further orders and process as may be necessary.

[CONTINUED ON NEXT PAGE]

**WHEREFORE**, Defendants respectfully request that the above-referenced action be removed from the Court of Common Pleas, First Judicial District, Philadelphia County, Philadelphia, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.

Respectfully Submitted:

Date: 03/02/2020

David B. Smith, Esquire
Attorney I.D. No. 59098
Daniel R. Boose, Esquire
Attorney I.D. No. 314344
Smith Kane Holman, LLC
112 Moores Road, Suite 300
Malvern, PA 19355
Phone: (610) 407-7217
Fax: (610) 407-7218

*Attorneys for Defendants, G & G Funding Corporation and Carlos Guzman*

# EXHIBIT "A"

**GRIFO & CHUNG, LLC**
Rosario A. Grifo, Esquire
Attorney I.D. No. 93928
Paul Chung, Esquire
Attorney I.D. No. 309859
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
(267) 777-9127

Filed and Attested by the Office of Judicial Records 26 FEB 2020 11:10 am E. HARRIS

| | | |
|---|---|---|
| JUAN TOMAS CRUZ | : | COURT OF COMMON PLEAS |
| | : | OF PHILADELPHIA COUNTY |
| Plaintiff, | : | CIVIL ACTION -- LAW |
| v. | : | |
| | : | |
| G & G FUNDING CORPORATION, | : | JANUARY TERM, 2020 |
| ET AL | : | |
| Defendants | : | NO. 02908 |

**PRAECIPE TO DISCONTINUE AS TO DEFENDANTS BRANDYWINE ABSTRACT COMPANY, LP & MAUREEN REILLY MONTANI ONLY**

TO THE PROTHONOTARY:

Kindly mark the above-captioned matter discontinued, without prejudice, as to ONLY named Defendants, BRANDYWINE ABSTRACT COMPANY, LP and MAUREEN REILLY MONTANI.

BY: /s/
ROSARIO A. GRIFO, ESQUIRE
Attorney for Plaintiff, Juan Tomas Cruz

# EXHIBIT "B"

**CONFIDENTIAL DOCUMENT FORM**

**APPELLATE/TRIAL COURT CASE RECORDS**

*Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts*
*204 Pa. Code § 213.81*
www.pacourts.us/public-records

**CRUZ VS G & G FUNDING CORPORATION ETAI**
Case Caption

**200102908**
Docket/Case No.

Philadelphia
Court

**This form is associated with the pleading titled Complaint, dated January 24, 2020.**

Pursuant to the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts*. The Confidential Document Form shall accompany a filing where a confidential document is required by law, ordered by the courts, or is otherwise necessary to effect the disposition of a matter. This form shall be accessible to the public, however the documents attached will not be publicly accessible, except as ordered by a court. The documents attached will be available to the parties, counsel of record, the courts and the custodian. **Please only attach documents necessary for the purpose of this case.** Complete the entire form and check all that apply. This form and any additional pages must be served on all unrepresented parties and counsel of record.

| Type of Confidential Document | Paragraph, page, etc. where the confidential document is reference in the filing: |
|---|---|
| [X] Financial Source Documents<br>[ ] Tax Returns and schedules | |
| [ ] W-2 forms and schedules including 1099 forms or sumilar documents | |
| [ ] Wage stubs, earning statements, or other similar documents | |
| [ ] Credit card statements | |
| [ ] Financial institution statements (e.g., investment/bank statements) | |
| [X] Check Registers | |
| [X] Checks or equivalent | |
| [ ] Loan application documents | |
| [ ] Minors' educational records | |
| [ ] Medical/Psychological records | |
| [ ] Children and Youth Services' records | |
| [ ] Marital Property Inventory and Pre-Trial Statement as provided in Pa.R.C.P.No.1920.33 | |
| [ ] Income and Expense Statement as provided in Pa.R.C.P. No. 1910.27(c) | |
| [ ] Agreements between the parties as used in 23 Pa.C.S. §3105 | |

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Signature of Attorney or Unrepresented Party

24-JAN-2020
Date

Name: Rosario A. Grifo

Attorney Number (if applicable): 93928

Address: 30 S 15th St 15th Floor Philadelphia Pa 19102

Telephone: (267)777-9127

Email: rosario@grifochung.com

**Rev. 12/2017**

2001057911

\\zdrconf 1/2/2018

**CONFIDENTIAL DOCUMENT FORM**

**APPELLATE/TRIAL COURT CASE RECORDS**

## Instructions for Completing the Confidential Document Form

The following documents are confidential and shall be filed with a court or custodian with the "Confidential Document Form":

1. Financial Source Documents as listed on the form
2. Minors' educational records
3. Medical/Psychological records are defined as "records relating to the past, present, or future physical or mental health or condition of an individual"
4. Children and Youth Services' records
5. Marital Property Inventory and Pre-Trial Statement as provided in Pa.R.C.P. No. 1920.33
6. Income and Expense Statement as provided in Pa.R.C.P. No. 1910.27(c)
7. Agreements between the parties as used in 23 Pa.C.S. §3105

For each confidential document, list the paragraph, page, etc. where the document is referenced in the filing. Please note, this form does not need to be filed in types of cases that are sealed or exempted from public access pursuant to applicable authority (e.g. juvenile, adoption, etc.)

- **Please only attach documents necessary for the purposes of this case.**
- Complete the entire form and check all that apply.
- This form, and any additional pages, must be served on all unrepresented parties and counsel of record.

A court or custodian is not required to review or redact any filed document for co1npliance with the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts.* A party's or attorney's failure to comply shall not affect access to case records that are otherwise accessible.

If a filed document fails to comply with the above referenced policy, a court may, upon motion or its own initiative, with or without a hearing, order the filed document sealed, redacted, amended or any combination thereof. A court may impose sanctions, including costs necessary to prepare a compliant document for filing in accordance with applicable authority.

**Rev. 12/2017**

**GRIFO & CHUNG, LLC**
BY: Rosario A. Grifo, Esquire
Attorney I.D. No. 93928
Paul Chung, Esquire
Attorney I.D. No. 309859
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
Phone (267) 777-9127

Filed and Attested by the Office of Judicial Records 24 JAN 2020 01:09 pm A. SILIGRINI

| | | |
|---|---|---|
| JUAN TOMAS CRUZ<br><br>Plaintiff,<br>v.<br><br>G & G FUNDING CORPORATION, ET AL<br><br>Defendants | : | COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY<br>CIVIL ACTION -- LAW<br><br>__________ TERM, 2020<br><br>NO. ________________ |

**PRAECIPE FOR A LIS PENDENS**

TO THE PROTHONOTARY:

Kindly index this action as a lis pendens against the properties located at 189 East Roosevelt Boulevard, Philadelphia, Pennsylvania, 19120, more fully described in Exhibits "A" of the underlying Complaint. I hereby certify that title to the real estate is involved.

Respectfully submitted,

**GRIFO & CHUNG, LLC**

Dated: 1/24/20

[signature]
Rosario A. Grifo, Esquire
30 S. 15th Street, 15th Floor
Philadelphia, PA 19102
(267)777-9127

**GRIFO & CHUNG, LLC**
Rosario A. Grifo, Esquire
Attorney I.D. No. 93928
Paul Chung, Esquire
Attorney I.D. No. 309859
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
(267) 777-9127

Filed and Attested by the Office of Judicial Records 24 JAN 2020 01:09 pm A. SILIGRINI

**THIS IS NOT AN ARBITRATION CASE**

| | | |
|---|---|---|
| JUAN TOMAS CRUZ<br><br>Plaintiff,<br><br>v.<br><br>G & G FUNDING CORPORATION, ET AL<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY CIVIL ACTION -- LAW<br><br>__________ TERM, 2020<br><br>NO.________________ |

## NOTICE TO DEFEND

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-1701

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-1701

**GRIFO & CHUNG, LLC**
Rosario A. Grifo, Esquire
Attorney I.D. No. 93928
Paul Chung, Esquire
Attorney I.D. No. 309859
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
(267) 777-9127

**THIS IS NOT AN ARBITRATION CASE**

| | | |
|---|---|---|
| JUAN TOMAS CRUZ<br><br>Plaintiff,<br><br>v.<br><br>G & G FUNDING CORPORATION<br>601 Susquehanna Avenue<br>Philadelphia, PA 19122<br>and<br>CARLOS GUZMAN<br>100 11th Avenue, Apt. 6A<br>New York, New York 10011<br>and<br>BRANDYWINE ABSTRACT COMPANY, LP<br>615 Old Lancaster Road<br>Bryn Mawr, PA 19010<br>and<br>MAUREEN REILLY MONTANI<br>615 Old Lancaster Road<br>Bryn Mawr, PA 19010<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY<br>CIVIL ACTION -- LAW<br><br>__________ TERM, 2020<br><br>NO.________________ |

## COMPLAINT IN QUIET TITLE

The foregoing Complaint in Quiet Title involves the property located at 189 East Roosevelt Boulevard, Philadelphia, Pennsylvania 19120 (hereinafter "Property"). Plaintiff, Juan Tomas Cruz (hereinafter "Plaintiff" or "Cruz"), by and through his counsel, Grifo & Chung, LLC, seeks quiet title as to ownership of the Property and in support thereof avers as follows:

## PARTIES

1. Plaintiff, Cruz is an adult individual residing within Philadelphia County, Pennsylvania with a home residence address of 189 East Roosevelt Boulevard, Philadelphia, PA 19120.

2. Defendant, G & G Funding Corporation (hereinafter "G & G") is a foreign, Delaware Corporation, authorized to conduct a continuous and systematic part of its general business within the Commonwealth in the Commonwealth of Pennsylvania with a registered local address of 601 Susquehanna Avenue, Philadelphia, PA 19122.

3. Defendant, Carlos Guzman, principal of G & G, is an adult individual with a mailing address of 100 11th Avenue, Apt. 6, New York, New York 10011, who regularly conducts business on behalf of G & G in Philadelphia, Pennsylvania.

4. Defendant, Brandywine Abstract Company, LP ("Brandywine"), is a domestic Title Insurance and Abstract Corporation authorized to conduct business in the Commonwealth of Pennsylvania with a registered corporate address of 615 Old Lancaster Road, Bryn Mawr, PA 19010.

5. Defendant, Maureen Reilly Montani, (hereinafter "Montani") is a Public Notary certified by the Commonwealth of Pennsylvania, and affiliated with Brandywine, a domestic Title Insurance and Abstract Corporation authorized to conduct business in the Commonwealth of Pennsylvania with a registered corporate address of 615 Old Lancaster Road, Bryn Mawr, PA 19010.

6. At all times relevant hereto Defendant, G & G, interacted and communicated with Cruz through Its principal, Carlos Guzman, Sr. (hereinafter "Guzman").

## VENUE & JURISDICTION

7. The property at issue is situated in Philadelphia County, Pennsylvania, and, as such, Philadelphia County is the appropriate venue in which to raise the instant action pursuant to Pa. R.C.P. 1062.

8. This Court has personal jurisdiction over the parties in this action pursuant to 42 Pa. C.S. § 5301.

9. This Court has proper jurisdiction to grant the relief requested pursuant to 42 Pa. C.S. § 7532, inclusive of the power to declare the rights, status, and legal relations of the parties involved.

## BACKGROUND

10. Cruz acquired the Property on March 11, 2006, via a fee simple general warranty deed from Carmen Lapaz, Power-Of-Attorney for Andres F. Lapaz, recorded with the Philadelphia County Recorder of Deeds, under Document ID No. 51414410, on April 7, 2006. See March 11, 2006 Deed attached hereto as Exhibit "A."

11. Cruz has resided at the Property continuously since he acquired it in 2006.

12. Cruz, a non-native Spanish speaker, with the foreign equivalent of an eighth-grade education, maintained an amicable relationship and friendship with G & G's principal, Guzman and would often seek his guidance and assistance concerning financial matters.

13. Cruz and Guzman preserved a personal relationship, they would speak frequently, have lunch together, and sometimes commute between New York City and Philadelphia together.

14. Cruz operated both a convenience store at 601 West Susquehanna Avenue, Philadelphia, PA under Susquehanna Grocery, LLC (hereinafter "Susquehanna"), and a

demolition company, Latino the Demolition, Inc. (hereinafter "Latino"), during much of the time that he had confided in and transacted with Guzman.

15. Guzman would periodically loan Cruz money through G & G for both his business and personal use.

16. Based on his lack of comprehension of the English language, limited education and his friendly relationship with Guzman. Cruz would often times sign documents relating to his various loans with G & G, when those documents were presented and explained by Guzman, without comprehending those documents or the effects that they would have.

17. In the days leading up to July 25, 2011, Cruz engaged Guzman regarding the possibility of borrowing 47,500.00, for the business purpose of purchasing a liquor license, for the sale alcoholic beverages at his 601 West Susquehanna Avenue Grocery Store Business.

18. Guzman agreed to loan Cruz the $47,500.00 needed to purchase the liquor license.

19. On July 25, 2011, G & G purportedly loaned Cruz, $70,000.00 at a Twenty-Four Percent (24%) per year interest rate, as secured by a residential mortgage on the Property recorded under Document ID No. 52378892 on August 11, 2011 ("hereinafter "Mortgage"). See August 11, 2011 Mortgage to Secure Guaranty attached hereto as Exhibit "B."

20. Cruz maintains that he was not aware that the July 25, 2011 loan was for $70,000.00, but rather, he was under the impression that said loan was for $47,500.00.

21. Cruz maintains that he was not aware that the August 11, 2011 Mortgage was secured by the Property (his home), but rather he believed that the loan was secured by his business.

22. Based on knowledge and belief, Cruz was never provided with a copy of the July 25, 2011 Note evidencing the purported residential loan on his home, as secured by the residential Mortgage, and he is unaware as to whether the Note referenced by the Mortgage even exists.

23. An accompanying July 25, 2011 Loan Agreement self-subscribes to be a Note (hereinafter "Loan Agreement"). See Loan Agreement attached hereto as Exhibit "C."

24. The Loan Agreement contemplated repayment via Seventy-Eight (78) consecutive weekly interest and principal payments, each of $1,220.51. See *Id.*

25. Said Loan Agreement indicated that the "[l]oan payments shall commence on the first day of the first month after the closing of this Loan, and due always on the first day of the week." See *Id.*

26. Additionally, the Loan Agreement contained non-descript boilerplate confession of judgment clause(s), vague default provision(s) and allotted cure period(s) of sixty (60) days but did not specify any late payment or penalty provisions. See *Id.*

27. Despite having allegedly signed the July 25, 2011 Mortgage and Loan Agreement, evidencing a $70,000.00 loan payable in monthly installment payments beginning August 1, 2011, Cruz believed that he was borrowing $47,500.00 from Guzman, and that he would have a year to pay him back, based on their conversations.

28. Cruz maintains that he never physically had possession of either, the $47,500.00 that he thought he was borrowing from Guzman, or the $70,000.00 that the July 25, 2011 Mortgage and Loan Agreement documents evidence.

29. Cruz maintains that the $47,500.00 that he thought he was borrowing from either Guzman or G & G, was paid directly to the individual or entity that he was intending to purchase his business' liquor license from.

30. Cruz maintains that to the best of his recollection and understanding, and pursuant to Guzman's direction, about a year after the July 25, 2011 loan, Cruz provided Guzman with a business check (through his Susquehanna business) made payable to "Wells Fargo," dated November 20, 2012, so that Guzman could presumably cash said check against Susquehanna's business account. See Check No. 1252 attached hereto as Exhibit "D."

31. Cruz maintains that after he gave Guzman the $47,500.00 check (for the money he thought that he had been lent), he was instructed by Guzman to begin making additional weekly payments in the amount of $1,220.51 to address the interest accrued on the July 25, 2011 Loan.

32. Based on his limited understanding, their relationship and past dealings with Guzman, and pursuant to the terms of the attached Loan Agreement (as represented to him by Guzman), Cruz began making installment payments on the residential loan.

33. Cruz's payments would come primarily from his business accounts for either Susquehanna or Latino, both of which constituted his primary sources of income.

34. To date, Cruz has identified an additional Sixty-Seven (67) payments, totaling $71,848.54, tendered between November 28, 2012 and March 7, 2014, to either "G & G," "G & G Funding," "Guzman & Guzman," or "Carlos Guzman" from Susquehanna's business account, relating to the Loan Agreement. See Consolidated Summary of Payment History attached hereto as Exhibit "E."

35. Per the terms of the Loan Agreement, Cruz would have had to initiate payments pursuant that Agreement on or around August 1, 2011, based on Cruz's understanding and personal records, it appears that the first payment made towards repayment of the July 25, 2011 Loan was the November 20, 2012 check in the amount of $47,500.00.

36. Cruz maintains that at no point between the July 25, 2011 and November 20, 2012 was he made aware by either Guzman or G & G of the weekly payments required by the July 25, 2011 Loan Agreement, but rather he was under the impression that he had one year to pay Guzman back..

37. The Loan Agreement's repayment terms fixed the repayment period between August 1, 2011 and January 21, 2013, though Cruz did not make a single payment towards the Loan prior to November 20, 2012, and neither Guzman nor G & G took any action to secure payment(s) during that period.

38. Additionally, the July 25, 2011 Loan Agreement would have called for a total cash repayment amount of $95,199.78 had all Seventy-Eight (78) installment payments been tendered.

39. A $70,000.00 loan remitted over a Seventy-Eight (78) week period, amortized at Twenty-Four Percent (24%) equals at total cash value of $81,341.76 under a normal amortization schedule, and <u>not</u> the $95,199.78 cash value called for by the terms of the Loan Agreement. <u>See</u> Amortization Calculation attached hereto as Exhibit "F."

40. Whereby, the total cash value of the repayment conditions specified in the Loan Agreement were miscalculated in favor of G & G by $12,858.02.

41. Since the Loan Agreement does not specify an amortization schedule, and considering that historically ambiguities relating to (or existing in) contracts executed in the Commonwealth of Pennsylvania are generally interpreted in the light most favorable to the non-drafting party, the maximum total repayment amount that Cruz should have been responsible for under the Loan Agreement was $81,341.76, and <u>not</u> the $95,199.78 specified by said Agreement.

42. After tendering the November 20, 2012 lump sum payment of $47,500.00, and the additional Sixty-Seven (67) payments between November 28, 2012 and March 7, 2014 (totaling

$71,848.54). Cruz believed that the obligation conferred by the July 25, 2011 Residential Loan Agreement had been satisfied, and accepted yet another loan from Guzman and/or G & G on March 21, 2014, relating to his business, the 601 West Susquehanna Grocery.

43. Cruz has identified at least thirty-five (35) subsequent payments tendered between April 21, 2014 and December 23, 2015, totaling an additional $104,679.00, made payable to either "G & G," "G & G Funding," "Guzman & Guzman," or "Carlos Guzman" from Susquehanna's business account. See Consolidated Summary of Payment History attached hereto as Exhibit "E."

44. Over four (4) years after the completion of the Loan Agreement's repayment term, and despite having received at least $176,527.54 between November 28, 2012 and December 23, 2015 (not including the November 20, 2019 check for $47,500.00), without prior notice of default, let alone the existence of a related foreclosure action, G & G recorded a Deed-In-Lieu of Foreclosure (premised on non-payment of July 25, 2011 Loan Agreement) on March 1, 2017 with the Philadelphia County Recorder of Deeds on March 8, 2017, under Document ID No. 53183909 ("Deed-In-Lieu"). See March 1, 2017 Deed-In-Lieu of Foreclosure attached hereto as Exhibit "G."

45. Based on information and belief, the Deed-In-Lieu was signed and executed by Guzman.

46. Based on information and belief, the Deed-In-Lieu was signed and executed at Defendant, Brandywine's offices and notarized by Defendant, Montani.

47. Said Deed-in-Lieu purported to convey the Property to G & G for One Dollar ($1.00) based on an alleged breach the Loan Agreement. See *Id.*

48. Despite the Deed-in-Lieu allegedly bearing his signature (or a likeness thereof) Cruz maintains that he was unaware of its existence and did not participate in or consent to the transfer of his Property. See *Id.*

49. Cruz maintains that he was not physically present in Defendant, Brandywine's offices on March 1, 2017, and that he did not appear before Brandywine's notary, Defendant, Montani, the day that the Deed-In-Lieu was purportedly signed and notarized. See *Id.*

50. At the time of the purported transfer the Philadelphia Office of Property Assessment ("OPA") assessed the Property's market value to be $139,200.00. See OPA Valuation History attached hereto as Exhibit "H."

51. At no point prior to the March 8, 2017 recordation of the Deed-In-Lieu was Cruz ever notified of a shortfall or default associated with the repayment of the Loan Agreement by G & G, or its principal, Guzman.

52. At no point prior to the March 8, 2017 recordation of the afore-mentioned Deed-In-Lieu was Cruz provided with the residential pre-foreclosure notices required under Act 91, 35 P.S. § 1680, *et seq.* and Act 6, 41 P.S. 101, *et seq.*

53. G & G's failure to provide pre-foreclosure notice pursuant to Act 91 and Act 6 makes the March 1, 2017 Deed-In-Lieu void *ab initio.*

54. Comprehensively, despite substantial, if not complete, repayment of the July 25, 2011 loan, an absolute absence of activity or notification regarding a potential shortfall or default for over four (4) years prior, and an utter lack of the required pre-foreclosure notice or initiation of a foreclosure action, Defendant, G & G wantonly executed and recorded the disputed Deed-In-Lieu against Cruz's Property. See March 1, 2017 Deed-In-Lieu of Foreclosure attached hereto as Exhibit "G."

55. As a result, title to the Property (Cruz's home) is currently vested in Defendant, G & G, via the baseless and inappropriate recordation of the March 1, 2017 Deed-In-Lieu, executed at Defendant, Brandywine's Offices, as notarized by Defendant, Montani.

56. Almost seamlessly, that very day, G & G and Cruz supposedly executed a Residential Lease pursuant to Its newly acquired interest in the Property (hereinafter "Residential Lease"). See March 1, 2017 Residential Lease attached hereto as Exhibit "I."

57. The terms of the purported Residential Lease required Cruz to make $1,500.00 payments beginning March 1, 2017, through February 28, 2022. See *Id.*

58. Based on information and belief, the Residential Lease was signed and executed by Guzman.

59. Based on information and belief, the Residential Lease was signed and executed at Defendant, Brandywine's offices. See *Id.*

60. Cruz maintains that he was not physically present in Defendant, Brandywine's offices on March 1, 2017.

61. Despite the Residential Lease allegedly bearing his signature (or a likeness thereof) Cruz maintains that he was unaware of the existence of the Residential Lease and did not participate in or consent to leasing the Property from G & G, since he was operating under the belief that he still owned the Property. See *Id.*

62. The purported March 21, 2017 Lease Agreement is unnotarized. See *Id.*

63. As Cruz was unaware that both his Property had been transferred to G & G (via the Deed-In-Lieu), and that a purported Residential Lease Agreement had been created, Cruz did not make a single lease payment to G & G pursuant to the terms of the Residential Lease.

64. Cruz did not realize that G & G had assumed ownership of his Property until sometime in late 2018, when he was allegedly informed by Guzman, via telephone, that G & G now owned his Property.

65. Upon hearing Guzman's proclamation relating to his Property, Cruz immediately fell ill and nearly lost his life.

66. On February 11, 2019, G & G initiated a Landlord-Tenant action for money judgment and possession relating to unpaid rents associated with the alleged Residential Lease drawn on the Property, under Philadelphia Municipal Court Claim No. LT-19-02-11-4217. See Docket for MC Claim No. LT-19-02-11-4217.

67. A trial concerning the Landlord-Tenant action filed under MC Claim No. LT-19-02-11-4217 is currently pending.

68. On November 18, 2019, Cruz filed a police report with the Detective Patrick Gallagher of the Philadelphia Police Department under Case No. 19-35-104699 relating to G & G's acquisition of the Property, the matter is currently under investigation.

**COUNT I**

**QUIET TITLE: FRUADULENT CONVEYANCE**

69. Plaintiff incorporates by reference paragraphs 1 through 68 as if fully set forth herein.

70. Pa. R.C.P. 1061(b)(2)(3) provides that a quiet title action may be brought "to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity, or discharge of any document."

71. G & G did not have the basis, authority, or consent necessary to record the March 1, 2017 Deed-In-Lieu to Cruz's Property.

72. Although, the Deed-in-Lieu appears to bear his signature (or a likeness thereof) Cruz maintains that he was unaware of Its existence and did not participate in or consent to the transfer of his Property.

73. Despite substantial, if not complete, repayment of the July 25, 2011 loan, an absolute absence of activity or notification regarding a potential shortfall or default for over four (4) years prior, and an utter lack of the required pre-foreclosure notice or initiation of a foreclosure action, Defendant, G & G wantonly executed and recorded the disputed Deed-In-Lieu against Cruz's Property.

74. The Deed-In-Lieu was premised on a shortfall or default that Cruz was never officially advised of, based on a loan that he was under the impression had been satisfied in full on or before March 7, 2014, or which should have been easily satisfied in full by the thirty-five (35) subsequent payments, tendered between April 21, 2014 and December 23, 2015, totaling an additional $104,679.00, made payable to either "G & G," "G & G Funding," "Guzman & Guzman," or "Carlos Guzman."

**WHEREFORE**, Plaintiff, Juan Tomas Cruz respectfully requests that this Honorable Court grant the following relief:

a. Declaring void and/or striking the March 1, 2017 Deed-In-Lieu of Foreclosure recorded by G & G on March 8, 2017, under Document ID No. 53183909 currently affecting the Property, as well as, any and all subsequent conveyance(s) and/or encumbrances transferred or affixed to said Property arising pursuant to G & G's claim;

b. Directing Defendant, G & G to file of record with the Philadelphia County Recorder of Deeds a satisfaction piece, or the like, pertaining to the July 25, 2011 Mortgage to Secure Guaranty recorded under Document ID No. 52378892 on August 11, 2011.

c. Directing the Philadelphia County Recorder of Deeds to cancel, strike or set aside any recorded deed instruments relating to the Property filed after January 1, 2017;

d. Decree directing the Philadelphia County Recorder of Deeds to record a certified copy of the Court's order and indexing the same against the Property to put all parties on notice of its content at no additional charge to the Plaintiff; and,

e. For the costs of this action, including reasonable attorney's fees, and for other such relief as this Honorable Court may deem necessary, appropriate and just.

**COUNT II**

**FRAUD IN THE INDUCEMENT**

75. Plaintiff incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76. Despite the Deed-in-Lieu allegedly bearing his signature (or a likeness thereof) Cruz maintains that he was unaware of Its existence and did not participate in or consent to the transfer of his Property on March 1, 2017.

77. Cruz maintains that he has never been to Defendant, Brandywine's offices.

78. Cruz maintains that he never appeared before Brandywine's notary, Defendant, Montani, on March 1, 2017, as purported by the Deed-In-Lieu.

79. Cruz maintains that he does not recall ever signing the Deed-In-Lieu or the related Residential Lease, and that even if he did, he certainly was not aware that he was deeding away and/or renting back his home.

80. Based on his limited understanding, language skills, and personal relationship with Guzman, Cruz would routinely sign papers presented and explained to him by Guzman at his place

of business, the 601 West Susquehanna Grocery, relating to the various loan(s) purportedly advanced by G & G.

81. Guzman would often ask Cruz to sign paperwork that he could not read and/or comprehend relating to loan(s) purportedly advanced by G & G.

82. Guzman, a principal of a lending institution (G & G), would generally proffer fraudulent, overly simplistic and/or incomplete assessments of the papers presented for signature, despite a presumed understanding of the documents intent and potential effect on both Cruz and his Property.

83. In the days leading up to July 25, 2011, Cruz had engaged Guzman regarding the possibility of borrowing $47,500.00, for the purpose of purchasing a liquor license for his business.

84. Cruz maintains that on or about July 25, 2011, he only intended to borrow $47,500.00 from Guzman and/or G & G for direct payment to the owner of the liquor license that he wished to purchase for his business.

85. Cruz maintains that he would not have agreed to sign the Loan Agreement had he known that it was for $70,000.00, and if he had not been misled by Guzman.

86. Due to his personal relationship with Guzman and his own individual limitations, Cruz would rely on whatever Guzman would tell him about the documents presented and he would sign off on the associated paperwork (often times without even looking at anything other than the signature page), even when such documents could be employed to his detriment.

87. As a result of Cruz's reliance on Guzman's coercion, representations and friendship, he may have inadvertently, without direct knowledge or informed consent, signed over his home to G & G, based on an unsubstantiated claim of a shortfall or default relating to the July 25, 2011 Loan Agreement.

88. Cruz would not have signed the Deed-In-Lieu had he been aware of what exactly he was signing, especially since he was certain that the Loan upon which the Deed-In-Lieu had been premised had been paid off some four (4) years prior

**WHEREFORE**, Plaintiff. Juan Tomas Cruz respectfully requests that this Honorable Court grant the following relief:

a. Declaring void and/or striking the March 1, 2017 Deed-In-Lieu of Foreclosure recorded by G & G on March 8, 2017, under Document ID No. 53183909 currently affecting the Property, as well as, any and all subsequent conveyance(s) and/or encumbrances transferred or affixed to said Property arising pursuant to G & G's claim;

b. Directing Defendant, G & G to file of record with the Philadelphia County Recorder of Deeds a satisfaction piece, or the like, pertaining to the July 25, 2011 Mortgage to Secure Guaranty recorded under Document ID No. 52378892 on August 11, 2011.

c. Directing the Philadelphia County Recorder of Deeds to cancel, strike or set aside any recorded deed instruments relating to the Property filed after January 1, 2017;

d. Decree directing the Philadelphia County Recorder of Deeds to record a certified copy of the court's order and index the same against the subject property to put all parties on notice of its content at no additional charge to the Plaintiff; and,

e. For the costs of this action, including reasonable attorney's fees, and for other such relief as this Honorable Court may deem necessary, appropriate and just.

## COUNT III

## UNJUST ENRICHMENT

89. Plaintiff incorporates by reference paragraphs 1 through 83 as if fully set forth herein.

90. As a result of the conduct described above, all named Defendants have been unjustly enriched at Cruz's expense.

91. Cruz maintains that the Property was transferred fraudulently, without basis, direct knowledge or informed consent.

92. Cruz maintains that the never visited Brandywine's Offices or appeared before its notary public, Montani on March 1, 2017.

93. Whereby, any profit or fee appreciated by either Defendant, Brandywine or Defendant, Montani associated with the purported March 1, 2017 Deed-In-Lieu would have been realized pursuant to a fraud and would constitute unjust enrichment.

94. Cruz maintains that he never knowingly transferred to the Property to Defendant, G & G.

95. Cruz maintains that to the best of his recollection and understanding, and pursuant to Guzman's direction, about a year after the July 25, 2011 loan, Cruz provided Guzman with a business check (through his Susquehanna business) made payable to "Wells Fargo," dated November 20, 2012, so that Guzman could presumably cash said check against Susquehanna's business account. See Check No. 1252 attached hereto as Exhibit "D."

96. Cruz remitted most, if not all, of the payments and monies claimed under the July 25, 2011 Loan Agreement, as secured by the Mortgage recorded under Document ID No. 52378892 on August 11, 2011, to G & G.

97. In addition to the November 20, 2012 check for $47,500.00, Cruz's remitted at least $176,527.54 to either "G & G," "G & G Funding," "Guzman & Guzman," or "Carlos Guzman," between November 28, 2012 and December 23, 2015.

98. Under a normal amortization schedule, the total cash value of the July 25, 2011 Loan Agreement was $81,341.76 and not the $95,199.78 contemplated by said Agreement.

99. The Loan Agreement did not specify any late payment or penalty provisions.

100. Cruz tendered $71,848.54 to "G & G," "G & G Funding," "Guzman & Guzman," or "Carlos Guzman," between November 28, 2012 and March 7, 2014, in installment payments alone.

101. Even if the November 20, 2012 lump sum payment of $47,500.00 is not considered, the maximum balance possibly owed, under a normal amortization schedule, to G & G on March 4, 2014 (immediately prior to G & G allegedly issuing Cruz's business another loan), would have been $9,493.22.

102. At the time of the alleged transfer of the Deed-In-Lieu in 2017, the City of Philadelphia OPA assessed the Property's market value to be $139,200.00.

103. Whereby, it is almost beyond comprehension that on March 1, 2017, Cruz would have knowingly agreed to sign over his Property (and his home), an asset valued at almost fifteen (15) times as much as the maximum outstanding balance that G & G could have even remotely claimed remained owing on the July 25, 2011 Loan Agreement ($9,493.22).

104. Cruz's remitted no less than $176,527.54 directly to either "G & G," "G & G Funding," "Guzman & Guzman," or "Carlos Guzman," between November 28, 2012 and December 23, 2015 that he can irrefutably demonstrate through his bank records. (Exhibit E").

105. To allow G & G to maintain ownership of Cruz's Property, in-light-of the payments made and accepted, the coercion employed, and fraud perpetuated would be both inequitable and unjust.

**WHEREFORE**, Plaintiff, Juan Tomas Cruz respectfully requests that this Honorable Court grant the following relief:

a. Declaring void and/or striking the March 1, 2017 Deed-In-Lieu of Foreclosure recorded by G & G on March 8, 2017, under Document ID No. 53183909 currently affecting the Property, as well as, any and all subsequent conveyance(s) and/or encumbrances transferred or affixed to said Property arising pursuant to G & G's claim;

b. Directing Defendant, G & G to file of record with the Philadelphia County Recorder of Deeds a satisfaction piece, or the like, pertaining to the July 25, 2011 Mortgage to Secure Guaranty recorded under Document ID No. 52378892 on August 11, 2011.

c. Directing the Philadelphia County Recorder of Deeds to cancel, strike or set aside any recorded deed instruments relating to the Property filed after January 1, 2017;

d. Decree directing the Philadelphia County Recorder of Deeds to record a certified copy of the court's order and index the same against the subject property to put all parties on notice of its content at no additional charge to the Plaintiff; and,

e. For the costs of this action, including reasonable attorney's fees, and for other such relief as this Honorable Court may deem necessary, appropriate and just.

## COUNT IV

## FAILURE TO PROVIDE PREFORCLOSURE NOTICEPURSUANT TO ACT 91, 35 P.S. § 1680 ET SEQ. & ACT 6, 41 P.S. 101 ET SEQ.

106. Plaintiff incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

107. Cruz has resided at the Property continuously since he acquired it in 2006.

108. G & G failed to provide Cruz notice of its intent to foreclose pursuant to Act 91, 35 P.S. § 1680 et seq. & Act 6, 41 P.S. 101 et seq., prior to pursuing and recording the purported Deed-In-Lieu.

109. Statutory notice, including the amount of default and the debtor's right to cure the default, is mandatory and must precede any action by a residential mortgage lender whereby it accelerates the maturity of the obligation, institutes legal action including foreclosure, or repossesses any security of the debtor. *Wells Fargo Bank N.A. v. Spivak*, 2014 PA Super 250, 104 A.3d 7 (Pa. Super. Ct., 2014) *citing General Elec. Credit Corp. v. Slawek*, 269 Pa.Super. 171, 409 A.2d 420, 422–23 (1979).

110. G & G's failure to provide Cruz with the require pre-foreclosure Act 91 and Act 6 notice renders the Deed-In-Lieu void or voidable *ab initio*.

111. Had G & G followed through with any presumably threatened foreclosure action against Cruz's Property the subsequent Sheriff's Sale of the Property would have been readily set aside pursuant to Pa. R.C.P 3132, for amongst other things, the failure to comply with the statutory requirements of Act 91, 35 P.S. § 1680 et seq. & Act 6, 41 P.S. 101 et seq., respectively.

112. As G & G's presumed foreclosure process would have been defective *ab initio*, due to its failure to provide Cruz with the pre-foreclosure notice required by Act 91, 35 P.S. § 1680 et seq. & Act 6, 41 P.S. 101 et seq., respectively, any deed that purports (or would purport) to transfer the Property, including G & G's March 1, 2017 Deed-In-Lieu, is defective and invalid on its face.

**WHEREFORE**, Plaintiff, Juan Tomas Cruz respectfully requests that this Honorable Court grant the following relief:

a. Declaring void and/or striking the March 1, 2017 Deed-In-Lieu of Foreclosure recorded by G & G on March 8, 2017, under Document ID No. 53183909 currently affecting the Property, as well as, any and all subsequent conveyance(s) and/or encumbrances transferred or affixed to said Property arising pursuant to G & G's claim;

b. Directing Defendant, G & G to file of record with the Philadelphia County Recorder of Deeds a satisfaction piece, or the like, pertaining to the July 25, 2011 Mortgage to Secure Guaranty recorded under Document ID No. 52378892 on August 11, 2011.

c. Directing the Philadelphia County Recorder of Deeds to cancel, strike or set aside any recorded deed instruments relating to the Property filed after January 1, 2017;

d. Decree directing the Philadelphia County Recorder of Deeds to record a certified copy of the court's order and index the same against the subject property to put all parties on notice of its content at no additional charge to the Plaintiff; and,

e. For the costs of this action, including reasonable attorney's fees, and for other such relief as this Honorable Court may deem necessary, appropriate and just.

**COUNT V**

**DECLARATORY JUDGMENT**

113. Plaintiff incorporates by reference paragraphs 1 through 112 as if fully set forth herein.

114. An actual, imminent, and/or inevitable controversy exists between the parties regarding the ownership of the Property.

115. Cruz has a direct, substantial and present interest in the Property.

116. Cruz is therefore entitled to and hereby seeks a declaration that he is the true, rightful and only owner of the Property.

117. A judicial declaration as to these issues will eliminate the controversy between Cruz and G & G. and any other subsequent parties who may wish to assert ownership rights to the Property superior to, or inconsistent with, Cruz's fee simple ownership of his Property.

**WHEREFORE**, Plaintiff, Juan Tomas Cruz respectfully requests that this Honorable Court grant the following relief:

a. Declaring that Plaintiff, Cruz is the true and rightful owner of the Property;

b. Declaring void and/or striking the March 1, 2017 Deed-In-Lieu of Foreclosure recorded by G & G on March 8, 2017, under Document ID No. 53183909 currently affecting the Property, as well as, any and all subsequent conveyance(s) and/or encumbrances transferred or affixed to said Property arising pursuant to G & G's claim;

c. Declaring that G & G have no ownership rights and/or other legal or equitable interest in the Property;

d. Ordering that G & G is forever barred from asserting any right, lien, title, or interest in the Property superior to, or inconsistent with, Plaintiff's current ownership of the Property; and

e. For the costs of this action, including reasonable attorney's fees, and for other such relief as this Honorable Court may deem necessary, appropriate and just.

Respectfully submitted,
**GRIFO & CHUNG, LLC**

Date: January 24, 2020

By: [signature]
Rosario A. Grifo, Esquire
Attorney for Plaintiff, Juan Tomas Cruz

**GRIFO & CHUNG, LLC**
Rosario A. Grifo, Esquire
Attorney I.D. No. 93928
Paul Chung, Esquire
Attorney I.D. No. 309859
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
(267) 777-9127

**THIS IS NOT AN ARBITRATION CASE**

| | | |
|---|---|---|
| JUAN TOMAS CRUZ<br><br>Plaintiff,<br>v.<br>G & G FUNDING CORPORATION, ET AL<br>Defendants | : | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY CIVIL ACTION -- LAW<br><br>__________ TERM, 2020<br><br>NO.________________ |

**AFFIDAVIT OF PLAINTIFF**

COMMONWEALTH OF PENNSYLVANIA :
: ss.
COUNTY OF PHILADELPHIA :

Juan Tomas Cruz, hereby states that he is the Plaintiff in this action and that the statements of fact made in the foregoing Complaint are true and correct to the best of his information and belief. The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Aim § 4904 relating to unsworn falsification to authorities.

Date: 1/24/20

Juan Tomas Cruz [signature]
Juan Tomas Cruz

**VERIFICATION**

I, ROSARIO A. GRIFO, Esquire, hereby state that I am counsel for Plaintiff and verify that the statements set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief; I understand that these statements are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

Dated: January 24, 2020

Rosario A. Grifo, Esquire

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "A"

Fee Simple Deed

51414410
Page: 1 of 4
04/07/2006 08:51AM

# *THIS INDENTURE Made the* 11th day of

**March** **in the year of our Lord Two Thousand Six (2006)**

***Between***

**ANDRES F. LAPAZ, by his Power of Attorney CARMEN LAPAZ**

(hereinafter called the Grantor(s), of the one part, and

**JUAN TOMAS CRUZ**

(hereinafter called the Grantee(s), of the other part,

***Witnesseth*** That the said Grantor(s), for and in consideration of the sum of Nine Thousand Five Hundred Dollars-------------------------------------------------------------($9,500.00)

lawful money of the United States of America, unto the said Grantor(s), well and truly paid by the said Grantee(s), at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, granted, bargained and sold, released and confirmed, and by these presents do grant, bargain and sell, release and confirm unto the said Grantee(s) his heirs and assigns,

**ALL THAT CERTAIN** lot or piece of ground with the buildings and improvements thereon erected.

**CONTAINING** in front or breadth on the said the Roosevelt blvd twenty-two feet five inches and exending of that with in length or depth Northward between parallel lines at right angles to the said the Roosevelt boulevard one hundred and nine feet to a certain sixteen feet wide driveway which extends westward into rising sun avenue.

**TOGETHER** with the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times hereafter, forever.

**BEING No. 189 E. Roosevelt Boulevard**

**SITUATE** on the Southeast side of Rising sun avenue in the Forty-second ward of the City of Philadelphia.

**BEING** the same premises which Margaret Mc Donald and James Mc Donald by Deed dated 8/15/05 and recorded 1/20/06 in Document ID# 51395904, granted and conveyed unto Andres F. Lapaz, in fee.

This Document Recorded 04/07/2006 08:51AM
State RTT: 0.00
Local RTT: 0.00
Doc Code: D
Doc Id: 51414410
Receipt #: 489692
Rec Fee: 156.50
Commissioner of Records, City of Philadelphia

***Together*** with all and singular the buildings and improvement, ways, streets, alleys, driveways, passages, watercourses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said Grantor(s), as well at law as in equity, of, in, and to the same.

***To have and to hold*** the said lot or piece of ground described with the buildings and improvements thereon erected with the said hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s) his heirs and assigns, to and for the only proper use and behoof of the said Grantee(s) his heirs and assigns forever.

***And*** the said Grantor(s) his heirs, executors and administrators do covenant, promise and agree, to and with the said Grantee(s) heirs and assigns, by these presents, that the said Grantor(s) and heirs, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s) his heirs and assigns, against the said Grantor(s), his heirs, and against all and every person and persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, them, or any of them, shall and will

WARRANT and forever DEFEND.

***In Witness Whereof,*** the part(y)(ies) of the first part have hereunto set her hand and seal.

Dated the day and year first above written.

***Sealed and Delivered***
IN THE PRESENCE OF US:

[signature] (SEAL)
Carmen Lapaz, Power of Attorney
for Andres F. Lapaz

_______________ (SEAL)

_______________ (SEAL)

Commonwealth of Pennsylvania

}ss:

County of Philadelphia

On This, the 11th day of March, 2006, before me, a Notary Public for the Commonwealth of Pennsylvania, residing in the County of Philadelphia, the undersigned Officer, personally appeared CARMEN LAPAZ, Attorney-in-fact for ANDRES F. LAPAZ

known to me and satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

**I hereunto set my hand and official seal.**

NOTARIAL SEAL
DONNA M. RANDOLPH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 10, 2006

NOTARY PUBLIC
Donna M. Randolph

9/10/06

## DEED

CARMEN LAPAZ , Attorney-in-fact for ANDRES F. LAPAZ

TO

JUAN TOMAS CRUZ

**PREMISES:**

189 E. Roosevelt Boulevard, Philadelphia, Penna. 19120

**Address of Grantee**

189 E. Roosevelt Blvd., Phila., PA. 19120

BOOK NO. PAGE NO.

DATE RECORDED

CITY TAX PAID

# PHILADELPHIA REAL ESTATE TRANSFER TAX CERTIFICATION

Complete each section and file with Recorder of Deeds when (1) the full consideration/value is/is not set forth in the deed,(2) when the deed is with consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

**A. CORRESPONDENT - All inquiries may be directed to the following person:**

NAME: Juan Tomas Cruz

TELEPHONE NUMBER: AREA CODE ( )

STREET ADDRESS: 189 E. Roosevelt Blvd. CITY: Phila., STATE: Pa. ZIP CODE: 19120

**B. TRANSFER DATA**

DATE OF ACCEPTANCE OF DOCUMENT

GRANTOR(S)/LESSOR(S): Carmen Lapaz,POA for Andres F. Lapaz

GRANTEE(S)/LESSEE(S): Juan Tomas Cruz

STREET ADDRESS: same as above

STREET ADDRESS: same as above

CITY STATE ZIP CODE

CITY STATE ZIP CODE

**C. PROPERTY LOCATION**

STREET ADDRESS: 189 E. Roosevelt Boulevard

CITY, TOWNSHIP, BOROUGH: Phila.

COUNTY: Phila.,

SCHOOL DISTRICT: Phila.

TAX PARCEL NUMBER

**D. VALUATION DATA**

| 1. ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
|---|---|---|
| 9,500.00 | + 0 | = 9,500.00 |
| 4. COUNTY ASSESSED VALUE | 5. COMMON LEVEL RATIO FACTOR | 6. FAIR MARKET VALUE |
| 4,240 | x 3.37 | = 14,288.80 |

**E. EXEMPTION DATA**

| 1A. AMOUNT OF EXEMPTION | 1B. PERCENTAGE OF INTEREST CONVEYED |
|---|---|
| 100 % | 100 % |

**2. Check Appropriate Box Below for Exemption Claimed**

☐ Will or intestate succession ______ (NAME OF DECEDENT) (ESTATE FILE NUMBER).

☐ Transfer to Industrial Development Agency.

☐ Transfer to agent or straw party. (Attach copy of agency/straw party agreement).

☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $ ______.

☐ Transfers to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number ______ Page Number ______. Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).

☐ Corrective deed (Attach copy of the prior deed).

☐ Other (Please explain exemption claimed, if other than listed above.) This is a transfer from brother-in-law TO his brother-in-law, therefore exempt from transfer tax.

*Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.*

SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY: Juan Tomas Cruz

DATE: 3/11/06

82-127 (Rev. 6/93)

(SEE REVERSE)

Case ID: 200102908

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "B"

# MORTGAGE TO SECURE GUARANTY

This Mortgage is made and dated July 25, 2011, between, Tomas Cruz with an address at 189 Roosevelt Blvd Philadelphia, Pennsylvania 19122 (Individually called the Guarantor) and G and G Funding Corporation a Delaware corporation, with a principal address of 364 East Main Street, Wilmington Delaware 19804 (from now on called the Lender).

The words Guarantor and Lender include all guarantors and all lenders under this Mortgage. The Lender and any other holder of this Mortgage may transfer this Mortgage and Guaranty, which it secures. The word Lender includes (a) the original Lender and (b) anyone who takes this Mortgage by transfer.

1. The Lender is making a loan to Tomas Cruz (Borrower) in the amount of Seventy Thousand Dollars ($70,000.00) (Loan), which said Loan is secured by a Loan Agreement (Note) executed by Borrower on July 25, 2011.
2. The purpose of this Mortgage to Secure Guaranty (Mortgage) is to give the Lender additional security for the Loan made by Lender to Borrower. Guarantor has executed a guaranty agreement (Guaranty) on July 25,2011 as further inducement to Lender to make this loan to Borrower, and has secured this Guaranty with a mortgage in first position against the property known as **189 East Roosevelt Blvd**, Philadelphia, Pennsylvania 19122 (from now on called Property) and which shall include in addition to the land the following: (a) All buildings and other improvements that now are or will be located on the land, (b) all fixtures, equipment, and personal property that now are or will be attached to or used with the land, buildings and other improvements, and (c) all other rights which the Guarantor now has or will acquire with regard to the land.
3. When the Borrower and/or the Guarantor pay all amounts due under the Note and Borrower's Mortgage and/or the Guaranty, respectively the Lender's rights under the Guaranty and this Mortgage shall end. At the request and expense of the Guarantor, the Lender shall cancel this Mortgage of record.
4. The Guarantor makes these promises to the Lender: (a) The Guarantor shall comply with all of the terms of the Guarantor and this Mortgage, (b) the Guarantor shall make all payments due under the Guaranty and this Mortgage, (c) the Guarantor owns and has the right to mortgage the Property to the Lender. The Guarantor shall defend this ownership against all claims, (d) the Guarantor shall pay when due all real estate taxes, assessments, water and sewer charges, and other charges against the Property, (e) the Guarantor shall not claim or be entitled to any credit against the principal or interest under the Borrower's Mortgage and Note and this Mortgage for taxes paid on the Property. The Guarantor shall not claim any deduction from the taxable value of the Property because of this Mortgage, (f) the Guarantor shall maintain hazard insurance on the Property. This insurance must cover loss or damage caused by fire and other hazards normally included under extended coverage insurance. It must also include such other hazard coverage as the Lender may reasonably require. If the Property is in a federal or state flood hazard zone the Guarantor shall maintain flood insurance. The insurance company, agent or broker, amounts of coverage, and forms of all policies must be acceptable to the Lender. The Lender may require that the amount of coverage be the greater of (1) the principal of the Note or (2) the current replacement value of the buildings and other improvements to the extent available. The coverage must be furnished by one insurance company. There can be no coinsurance or sharing of the risk by more than one company. The Guarantor shall deliver the original policies and all renewals to the Lender prior to settlement and additional times if so required by Lender. All policies shall state that the insurance company cannot cancel or refuse to renew without at least 10 days notice to the Lender. They shall include a standard mortgage clause naming the Lender. All insurance proceeds shall be paid to the Lender. In case of loss or damage the Guarantor shall promptly notify the Insurance company and the Lender. The Guarantor shall promptly (1) file a proof of loss with the insurance company and (2) settle the claim. If not, the Lender may do so. Following the occurrence of an Event of Default under the Loan Documents the Lender may use the insurance proceeds received to (1) repair and restore the Property or (2) reduce the principal. Prior to the occurrence of an Event of Default, Lender agrees to make the proceeds available for repair and restoration of the Property. The Lender shall use any money left after the repair and restoration to reduce the principal. This shall not change the amounts or due dates of the monthly payments under the Note. The Lender shall pay to the Guarantor any money left after paying the entire principal and interest, (g) the Guarantor shall keep the Property in good repair ordinary wear and tear excepted. The Guarantor shall not damage, destroy or abandon the Property. The Lender may inspect the Property on reasonable notice to the

52378892
Page: 1 of 4
08/11/2011 10:28AM

This Document Recorded
08/11/2011
10:28AM
Doc Code: M
Commissioner of Records, City of Philadelphia

Doc Id: 52378892
Receipt #: 1030716
Rec Fee: 170.00

Guarantor. The Guarantor shall make repairs as may reasonably be required by the Lender, (h) the Guarantor shall not do any of the following to the Property without the written consent of the Lender (which shall not be unreasonably withheld, delayed or conditioned as to clauses (1) or (2) below if the replacement work therefore adds value to the Property): (1) Remove, demolish, or materially alter any buildings or other improvements, (2) remove any fixtures, and (3) give a security interest in any fixtures. If a fixture is destroyed or removed, the Guarantor shall replace it with another of at least equal quality and condition, (i) eminent domain is the right of a government to lawfully condemn and take private property for a public purpose. Fair value must be paid for the taking. The taking may occur either by court order or by deed to the condemning party. If all or any part of the Property is taken by eminent domain, the entire payment shall be given to Lender. Lender shall use any money it deems so appropriate to reduce the principal. This shall not change the amounts or due dates of the monthly payments under the Note. Lender shall pay to the Guarantor any money left after paying the entire principal and interest, (j) in this Mortgage, a lien is a legal claim of another against property for (1) the payment of a debt or (2) the performance of an obligation. This Mortgage is a lien of the Lender against the Property for the security of the Guaranty by Guarantor to repay the Note of Borrower. A superior lien would be entitled to be paid before this Mortgage on a court-ordered sale of the Property. The Guarantor shall not allow a superior lien against the Property, (k) the Guarantor shall not accept rent (if any) from any tenant of the Property for more than one month in advance. In the event Lender declares an the Event of Default under the Guaranty Agreement, Borrower's Mortgage or Note, all leases of Guarantor shall be assigned to Lender, (l) the Guarantor shall obey in all material respects, all laws, rules and ordinances which apply to the Property with the right to contest the imposition or enforcement of any such items so long as such contest is made in good faith, Guarantor has posted adequate security with Lender in its reasonable adequate security with Lender in its reasonable discretion and such contest has the effect of staying any such enforcement of such laws, rules or ordinances as the case may be. The Guarantor shall not use or allow the Property to be used for any illegal purpose.

5. In this Mortgage, escrow is the delivery of money to the Lender for the payment of expenses of the Property. Following an Event of Default, the Guarantor shall pay to the Lender either or both of the following amounts on a monthly basis: (a) 1/12 of the yearly real estate taxes, (b) 1/12 of the yearly hazard insurance premiums. These payments shall be held in escrow by the Lender. They shall be used by the Lender to pay the taxes and the insurance premiums when due. The Lender may adjust these amounts from time to time to reflect changes in the taxes and insurance premiums.

6. The Lender may pay any of the following expenses of the Property when due if the Guarantor does not: (a) real estate taxes, assessments, water charges, and sewer charges, (b) all other charges, (c) hazard insurance premiums, (d) repairs and maintenance, and (e) payments of claims against the Property if necessary to protect the Lender's rights under this Mortgage, unless Guarantor is contesting any such payment in good faith proceedings and in accordance with established procedures, adequate security has been posted with Lender and such contest will not result in any levying of fines against Guarantor or Lender or placing of liens against the Property. All payments made by the Lender shall be paid to the Lender on written demand. Interest shall be charged at twenty four percent (24%) per annum, from the time of payment by the Lender.

7. The Lender has the right, called acceleration, to declare the entire unpaid principal and interest under the Note executed by Borrower, the Borrower's Mortgage or the Guaranty due immediately for any of the following reasons: (a) The failure of the Borrower or the Guarantor to make any payment of principal or interest under the Note within sixty (60) days after its due date, (b) the failure of the Guarantor to keep any other promise in this Mortgage within sixty (60) days after written notice from the Lender or within such reasonable time thereafter if such failure is of a nature that is not capable of being cured within sixty (60) days, guarantor has commenced to cure within such 60 days and diligently prosecutes such cure to completion, (c) any change in the ownership of all or any part of the Property. A change resulting from the death of a Guarantor shall not be considered a change of ownership, (d) the starting of foreclosure or execution proceedings by the holder of any other mortgage or lien on the Property, and (e) the starting of bankruptcy, receivership, or insolvency proceedings by or against a Guarantor which in the case of an involuntary proceeding is not dismissed or stayed within 120 days. The Lender's failure to declare acceleration for any cause shall not prevent the Lender from declaring acceleration for any cause occurring at a later time.

8. If the Lender declares acceleration, the Guarantor shall immediately pay to the Lender the entire unpaid principal and interest due under the Note, the Borrower's Mortgage or the Guaranty. If the Guarantor does not do so, the Lender shall have all rights given to mortgage lenders by law and under this Mortgage, for example: (a) To

enter and take possession of the Property in a lawful way and manage the Property, (b) to ask a court to appoint a receiver of rents (if any) of the Property. The Guarantor consents to the appointment of a receiver, (c) to start a court action known as foreclosure to take away all of the Guarantor's rights in the Property and to have the Property sold. A foreclosure sale is a court-ordered sale of the Property. The proceeds of the sale are used to pay the entire unpaid principal and interest due under the Note, the Borrower's Mortgage and the Guaranty, plus all costs allowed by law, and (d) The court-ordered sale of the Property in the foreclosure action may not bring in enough money to pay the entire amount due under the Note, the Borrower's Mortgage and the Guaranty, plus costs. The Lender may then sue the Guarantor under the Guaranty for the difference. The Lender reserves any rights given by law to sue under the Guaranty before beginning a foreclosure action under this Mortgage.

9. All notices under this Mortgage must be in writing. They may be given by (a) personal delivery, (b) certified mail, return receipt requested, or (c) nationally recognized overnight courier. Each party must accept and claim the notices given by the other. Notices shall be addressed to the other party at the address written at the beginning of this Mortgage. Either party may notify the other of a change of address.

10. This Mortgage is binding on all Guarantors and all those who lawfully succeed to their rights or take their places.

The Guarantor agrees to all of the terms of this Mortgage by signing below. The Guarantor has received a true copy of this Mortgage without charge.

GARANTOR: [signature] DATE: 7/25/11

LENDER: [signature] DATE: 7/27/11

**CERTIFICATE OF ACKNOWLEDGMENT BY INDIVIDUAL**

**State of Pennsylvania, County of Philadelphia.**

I am N ACEVEDO JR ESQ an officer authorized to take acknowledgments and proofs in this State. I sign this acknowledgment below to certify that it was made before me. On JULY 25, 2011, Tomas Cruz appeared before me in person. (If more than one person appears, the word "this person" shall include all persons named who appeared before the officer and made this acknowledgment). I am satisfied that this person is the person named in and who signed this Document. This person acknowledged signing, sealing and delivering this Document as this person's act and deed for the uses and purposes expressed in this Document.

[signature]

ATTORNEY AT LAW

Officer signature above, Print, stamp or type name and title directly beneath

**Record and return to Mortgagee at the address below:**

**G and G FUNDING**

**364 EAST MAIN STREET Wilmington Delaware 19804**

[signature]

**ALL THAT CERTAIN** lot or piece of ground with the buildings and improvements thereon erected.

**CONTAINING** in front or breadth on the said the Roosevelt blvd twenty-two feet five inches and exending of that with in length or depth Northward between parallel lines at right angles to the said the Roosevelt boulevard one hundred and nine feet to a certain sixteen feet wide driveway which extends westward into rising sun avenue.

**TOGETHER** with the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times hereafter, forever.

**BEING No. 189 E. Roosevelt Boulevard**

**SITUATE** on the Southeast side of Rising sun avenue in the Forty-second ward of the City of Philadelphia.

**BEING** the same premises which Margaret Mc Donald and James Mc Donald by Deed dated 8/15/05 and recorded 1/20/06 in Document ID# 51395904, granted and conveyed unto Andres F. Lapaz, in fee.

This Document Recorded
04/07/2006 State RTT: 0.00
08:51AM Local RTT: 0.00
Doc Code: D Commissioner of Records, City of Philadelphia

Doc Id: 51414410
Receipt #: 489692
Rec Fee: 156.50

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "C"

# LOAN AGREMENT

**$70,000.00**

Philadelphia, Pennsylvania

July __25__, 2011

FOR VALUE RECEIVED, Tomas Cruz an individual residing at 189 East Roosevelt Blvd Philadelphia Pennsylvania 19122 (Borrower), hereby promises to pay to the order of G and G funding Corporation a Delaware Corporation located at 364 East Main Street, Wilmington Delaware 19804 or it's agent or assign, (Lender) the principal amount of Seventy Thousand Dollars ($70,000) at Twenty four Percent interest per year pursuant this loan Agreement (Note) and secured, by among other things, a Mortgage on real estate located at 189 East Roosevelt Blvd. Philadelphia PA. 19122, a Personal Guarantee by the Borrower and by the Grocery business including all equipment and the lease located at 601 West Susquehanna, Philadelphia PA . <u>Loan payments shall commence on the first day of the First month after the closing of this Loan, and due always on the first day of the week</u> Borrower shall make Seventy- Eight (78) equal, consecutive weekly principal and interest payments, each of One thousand two hundred and twenty dollars and fifty-one cents ($1,220.51).

If a payment is not received by the Fourth (4th) day of the week in which the payment is due, Borrower shall have 60 days to cure. Failure to cure within the 60 day period will be considered a default of this note and the all of the interest and principal will be due and owing. The Lender, without any further action will take over the grocery business and the lease from the borrower and the borrower will transfer and or assign all necessary documents and or paperwork to complete the transfer to the Lender of his/her assignee. In the event of the Lenders death all of interest and principal will be due and owing. The Lender, without any further action will take over the grocery business.and the lease from the borrower's estate and the borrower's estate will transfer and or assign all necessary documents and or paperwork to complete the transfer to the Lender of his/her assignee.

All amounts payable by Borrower to Lender hereunder shall be paid directly to Lender at 364 East Main Street Wilmington, Delaware (or at such other address of which Lender shall give notice to Borrower in accordance with the Loan Agreement) in immediately available funds

BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS LENDER, BY ITS ATTORNEY, OR THE PROTHONOTARY OR THE CLERK OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR IN ANY JURISDICTION WHERE PERMITTED BY LAW, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT AS DEFINED IN THE LOAN AGREEMENT OR AT ANY TIME THEREAFTER, TO APPEAR FOR BORROWER AND CONFESS AND ENTER JUDGMENT AGAINST IT IN FAVOR OF LENDER IN ANY JURISDICTION IN WHICH BORROWER OR ANY OF ITS PROPERTY IS LOCATED FOR THE AMOUNT OF ALL OBLIGATIONS, TOGETHER WITH COSTS OF SUIT AND WITH ACTUAL COLLECTION COSTS (INCLUDING REASONABLE ATTORNEYS' FEES), WITH OR WITHOUT DECLARATION, AND WITHOUT STAY OF EXECUTION, AND WITH RELEASE OF ERRORS AND THE RIGHT TO ISSUE EXECUTION FORTHWITH, AND FOR DOING SO THIS AGREEMENT OR A COPY VERIFIED BY AFFIDAVIT SHALL BE A SUFFICIENT WARRANT. BORROWER HEREBY WAIVES AND RELEASES ALL RELIEF FROM ANY AND ALL APPRAISEMENT STAY OR EXEMPTION LAW OF ANY STATE NOW IN FORCE OR HEREAFTER ENACTED. THIS AUTHORITY AND POWER SHALL NOT BE EXHAUSTED BY THE EXERCISE THEREOF AND SHALL CONTINUE UNTIL THE OBLIGATIONS ARE FULLY PAID, PERFORMED, DISCHARGED AND SATISFIED

BEING FULLY AWARE OF ITS RIGHTS TO PRIOR NOTICE AND HEARING ON THE VALIDITY OF ANY CLAIMS THAT MAY BE ASSERTED AGAINST IT BY LENDER UNDER THIS NOTE BEFORE JUDGMENT CAN BE ENTERED AND BEFORE ASSETS OF THE BORROWER CAN BE GARNISHED AND ATTACHED, EACH BORROWER HEREBY KNOWINGLY, VOLUNTARILY

AND INTENTIONALLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO LENDER, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, OR AT ANY TIME THEREAFTER ENTERING JUDGMENT AGAINST BORROWER BY CONFESSION AND ATTACHING AND GARNISHING THE BANK ACCOUNTS AND OTHER ASSETS OF BORROWER, WITHOUT PRIOR NOTICE OR OPPORTUNITY FOR A HEARING. BORROWER ACKNOWLEDGES THAT IT HAS HAD THE ASSISTANCE OF COUNSEL IN THE REVIEW AND EXECUTION OF THIS NOTE AND FURTHER ACKNOWLEDGES THAT THE MEANING AND EFFECT OF THE FOREGOING PROVISIONS CONCERNING CONFESSION OF JUDGMENT HAVE BEEN FULLY EXPLAINED TO BORROWER BY SUCH COUNSEL.

Except for notices expressly provided for under the Loan Documents, Borrower hereby waives the requirements of demand, presentment, protest, notice of protest and dishonor and all other demands or notices of any kind in connection with the delivery, acceptance, performance, default, dishonor or enforcement of this Note

The laws of the Commonwealth of Pennsylvania shall govern the construction, interpretation and enforcement of this Note.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Borrower has caused this Note to be executed by its duly authorized officers as of this________ day of ________, 2011.

BORROWER: [signature] DATE [handwritten]
Tomas Cruz

LENDER: [signature] Date 7/28/11
G and G Funding Corporation Carlos Guzman President

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "E"

**Susquehanna Grocery, LLC payments to either G & G Funding Corporation or Carlos Guzmman**

| Date | Check Number | Amount |
|---|---|---|
| | | |
| November 28, 2012 | 1253 | $1,220.51 |
| December 6, 2012 | 1283 | $1,220.51 |
| December 14, 2012 | 1256 | $1,220.51 |
| December 21, 2012 | 1257 | $1,220.51 |
| December 28, 2012 | 1258 | $1,220.51 |
| January 4, 2013 | 1274 | $1,220.51 |
| January 11, 2013 | 1259 | $1,220.50 |
| January 13, 2013 | 1275 | $1,220.51 |
| January 18, 2013 | 1276 | $1,220.51 |
| January 25, 2013 | 1271 | $1,220.51 |
| February 3, 2013 | 1272 | $1,220.51 |
| February 15, 2013 | 1273 | $1,220.51 |
| February 22, 2013 | 1280 | $1,220.51 |
| March 1, 2013 | 1281 | $1,220.51 |
| March 8, 2013 | 1282 | $1,220.51 |
| March 14, 2013 | 1262 | $1,220.51 |
| March 21, 2013 | 1263 | $1,220.51 |
| March 28, 2013 | 1264 | $1,220.51 |
| April 4, 2013 | 1260 | $1,220.51 |
| April 9, 2013 | 1268 | $1,220.51 |
| April 11, 2013 | 1261 | $1,220.51 |
| April 16, 2013 | 1269 | $1,220.51 |
| April 16, 2013 | 1340 | $100.00 |
| April 23, 2013 | 1337 | $100.00 |
| April 18, 2013 | 1265 | $1,220.51 |
| April 25, 2013 | 1266 | $1,220.51 |
| April 30, 2013 | 1338 | $100.00 |
| May 1, 2013 | 1339 | $100.00 |
| May 2, 2013 | 1267 | $1,220.51 |
| May 17, 2013 | 1352 | $100.00 |
| May 23, 2013 | 1278 | $1,220.51 |
| May 24, 2013 | 1353 | $100.00 |
| May 30, 2013 | 1279 | $1,220.51 |
| May 30, 2013 | 1360 | $100.00 |
| June 7, 2013 | 1358 | $100.00 |
| June 7, 2013 | 1284 | $1,220.51 |
| June 13, 2013 | 1286 | $1,220.51 |
| June 13, 2013 | 1355 | $100.00 |
| June 20, 2013 | 1378 | $1,220.51 |
| June 21, 2013 | 1356 | $100.00 |
| June 27, 2013 | 1377 | $1,220.51 |
| June 28, 2013 | 1357 | $100.00 |
| July 5, 2013 | 1359 | $100.00 |
| July 5, 2013 | 1379 | $1,220.51 |
| July 11, 2013 | 1380 | $1,220.51 |

| | | |
|---|---|---|
| July 19, 2013 | 1408 | $1,320.50 |
| July 26, 2013 | 1411 | $1,320.51 |
| August 2, 2013 | 1405 | $1,320.51 |
| August 8, 2013 | 1383 | $1,320.51 |
| August 16, 2013 | 1384 | $1,320.51 |
| August 23, 2013 | 1409 | $1,320.51 |
| August 30, 2013 | 1410 | $1,320.51 |
| September 5, 2013 | 1406 | $1,320.51 |
| September 13, 2013 | 1407 | $1,320.51 |
| September 20, 2013 | 1430 | $1,320.51 |
| September 27, 2013 | 1431 | $1,320.51 |
| October 4, 2013 | 1432 | $1,320.51 |
| October 11, 2013 | 1433 | $1,320.51 |
| October 18, 2013 | 1434 | $1,320.51 |
| October 25, 2013 | 1435 | $1,320.51 |
| November 1, 2013 | 1466 | $1,320.51 |
| November 8, 2013 | 1467 | $1,320.51 |
| November 15, 2013 | 1468 | $1,320.51 |
| November 29, 2013 | 1469 | $1,320.51 |
| December 6, 2013 | 1470 | $1,320.51 |
| December 13, 2013 | 1471 | $1,320.51 |
| February 28, 2014 | 1627 | $1,320.51 |
| March 7, 2014 | 1616 | $1,320.51 |
| | | **$71,848.54** |
| April 21, 2014 | 1619 | $3,000.00 |
| April 25, 2014 | 1624 | $2,679.00 |
| May 16, 2014 | 1621 | $3,000.00 |
| June 5, 2014 | 1618 | $3,000.00 |
| June 23, 2014 | 1617 | $3,000.00 |
| July 11, 2014 | 1622 | $3,000.00 |
| July 25, 2014 | 1620 | $3,000.00 |
| August 7, 2014 | 1623 | $3,000.00 |
| August 22, 2014 | 1625 | $3,000.00 |
| September 3, 2014 | 1626 | $3,000.00 |
| October 3, 2014 | 1557 | $3,000.00 |
| October 22, 2014 | 1558 | $3,000.00 |
| November 6, 2014 | 1559 | $3,000.00 |
| November 24, 2014 | 1560 | $3,000.00 |
| December 3, 2014 | 1561 | $3,000.00 |
| December 20, 2014 | 1562 | $3,000.00 |
| January 12, 2015 | 1563 | $3,000.00 |
| January 21, 2015 | 1564 | $3,000.00 |
| March 4, 2015 | 1565 | $3,000.00 |
| March 13, 2015 | 1567 | $3,000.00 |
| April 1, 2015 | 1568 | $3,000.00 |
| June 4, 2015 | 1572 | $3,000.00 |
| June 22, 2015 | 1573 | $3,000.00 |
| July 1, 2015 | 1574 | $3,000.00 |

| | | |
|---|---|---|
| July 7, 2015 | 1575 | $3,000.00 |
| August 4, 2015 | 1576 | $3,000.00 |
| August 22, 2015 | 1577 | $3,000.00 |
| September 3, 2015 | 1578 | $3,000.00 |
| September 23, 2015- on or about | 1579 | $3,000.00 |
| October 5, 2015 | 1580 | $3,000.00 |
| October 27, 2015 | 1581 | $3,000.00 |
| November 6, 2015 | 1582 | $3,000.00 |
| November 30, 2015 | 1584 | $3,000.00 |
| December 1, 2015 | 1583 | $3,000.00 |
| December 23, 2015 | 1585 | $3,000.00 |
| | | **$104,679.00** |
| | | |
| | | **Total $176,527.54** |

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "F"

## Loan Summary

| | | | |
|---|---|---|---|
| Loan Amount: | $70,000.00 | Number of Payments: | 78 |
| Annual Interest Rate: | 24.0000% | Periodic Payment: | $1,220.51 |
| Loan Date: | 07/25/2011 | 1st Payment Due: | 08/01/2011 |
| Payment Frequency: | Weekly | Last Payment Due: | 01/21/2013 |
| Total Interest Due: | $11,062.36 | Total All Payments: | $81,062.36 |

## Payment Schedule

| #/Year | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan: | 07/25/2011 | 0.00 | 0.00 | 0.00 | 70,000.00 |
| 1:1 | 08/01/2011 | 1,220.51 | 320.62 | 899.89 | 69,100.11 |
| 2:1 | 08/08/2011 | 1,220.51 | 316.50 | 904.01 | 68,196.10 |
| 3:1 | 08/15/2011 | 1,220.51 | 312.36 | 908.15 | 67,287.95 |
| 4:1 | 08/22/2011 | 1,220.51 | 308.20 | 912.31 | 66,375.64 |
| 5:1 | 08/29/2011 | 1,220.51 | 304.02 | 916.49 | 65,459.15 |
| 6:1 | 09/05/2011 | 1,220.51 | 299.82 | 920.69 | 64,538.46 |
| 7:1 | 09/12/2011 | 1,220.51 | 295.61 | 924.90 | 63,613.56 |
| 8:1 | 09/19/2011 | 1,220.51 | 291.37 | 929.14 | 62,684.42 |
| 9:1 | 09/26/2011 | 1,220.51 | 287.11 | 933.40 | 61,751.02 |
| 10:1 | 10/03/2011 | 1,220.51 | 282.84 | 937.67 | 60,813.35 |
| 11:1 | 10/10/2011 | 1,220.51 | 278.54 | 941.97 | 59,871.38 |
| 12:1 | 10/17/2011 | 1,220.51 | 274.23 | 946.28 | 58,925.10 |
| 13:1 | 10/24/2011 | 1,220.51 | 269.89 | 950.62 | 57,974.48 |
| 14:1 | 10/31/2011 | 1,220.51 | 265.54 | 954.97 | 57,019.51 |
| 15:1 | 11/07/2011 | 1,220.51 | 261.17 | 959.34 | 56,060.17 |
| 16:1 | 11/14/2011 | 1,220.51 | 256.77 | 963.74 | 55,096.43 |
| 17:1 | 11/21/2011 | 1,220.51 | 252.36 | 968.15 | 54,128.28 |
| 18:1 | 11/28/2011 | 1,220.51 | 247.92 | 972.59 | 53,155.69 |
| 19:1 | 12/05/2011 | 1,220.51 | 243.47 | 977.04 | 52,178.65 |
| 20:1 | 12/12/2011 | 1,220.51 | 238.99 | 981.52 | 51,197.13 |
| 21:1 | 12/19/2011 | 1,220.51 | 234.50 | 986.01 | 50,211.12 |
| 22:1 | 12/26/2011 | 1,220.51 | 229.98 | 990.53 | 49,220.59 |
| | *2011 Totals:* | *26,851.22* | *6,071.81* | *20,779.41* | |
| | *Running Totals:* | *26,851.22* | *6,071.81* | *20,779.41* | |
| 23:1 | 01/02/2012 | 1,220.51 | 225.44 | 995.07 | 48,225.52 |
| 24:1 | 01/09/2012 | 1,220.51 | 220.89 | 999.62 | 47,225.90 |
| 25:1 | 01/16/2012 | 1,220.51 | 216.31 | 1,004.20 | 46,221.70 |
| 26:1 | 01/23/2012 | 1,220.51 | 211.71 | 1,008.80 | 45,212.90 |
| 27:1 | 01/30/2012 | 1,220.51 | 207.09 | 1,013.42 | 44,199.48 |
| 28:1 | 02/06/2012 | 1,220.51 | 202.45 | 1,018.06 | 43,181.42 |
| 29:1 | 02/13/2012 | 1,220.51 | 197.78 | 1,022.73 | 42,158.69 |
| 30:1 | 02/20/2012 | 1,220.51 | 193.10 | 1,027.41 | 41,131.28 |
| 31:1 | 02/27/2012 | 1,220.51 | 188.39 | 1,032.12 | 40,099.16 |
| 32:1 | 03/05/2012 | 1,220.51 | 183.67 | 1,036.84 | 39,062.32 |
| 33:1 | 03/12/2012 | 1,220.51 | 178.92 | 1,041.59 | 38,020.73 |
| 34:1 | 03/19/2012 | 1,220.51 | 174.15 | 1,046.36 | 36,974.37 |
| 35:1 | 03/26/2012 | 1,220.51 | 169.35 | 1,051.16 | 35,923.21 |
| 36:1 | 04/02/2012 | 1,220.51 | 164.54 | 1,055.97 | 34,867.24 |
| 37:1 | 04/09/2012 | 1,220.51 | 159.70 | 1,060.81 | 33,806.43 |
| 38:1 | 04/16/2012 | 1,220.51 | 154.84 | 1,065.67 | 32,740.76 |
| 39:1 | 04/23/2012 | 1,220.51 | 149.96 | 1,070.55 | 31,670.21 |
| 40:1 | 04/30/2012 | 1,220.51 | 145.06 | 1,075.45 | 30,594.76 |
| 41:1 | 05/07/2012 | 1,220.51 | 140.13 | 1,080.38 | 29,514.38 |
| 42:1 | 05/14/2012 | 1,220.51 | 135.18 | 1,085.33 | 28,429.05 |
| 43:1 | 05/21/2012 | 1,220.51 | 130.21 | 1,090.30 | 27,338.75 |
| 44:1 | 05/28/2012 | 1,220.51 | 125.22 | 1,095.29 | 26,243.46 |
| 45:1 | 06/04/2012 | 1,220.51 | 120.20 | 1,100.31 | 25,143.15 |
| 46:1 | 06/11/2012 | 1,220.51 | 115.16 | 1,105.35 | 24,037.80 |
| 47:1 | 06/18/2012 | 1,220.51 | 110.10 | 1,110.41 | 22,927.39 |
| 48:1 | 06/25/2012 | 1,220.51 | 105.01 | 1,115.50 | 21,811.89 |

*Last payment decreased by $14,137.42 due to rounding*

*Calculation method: Normal, 360 days per year*

## Payment Schedule

| #/Year | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 49:1 | 07/02/2012 | 1,220.51 | 99.90 | 1,120.61 | 20,691.28 |
| 50:1 | 07/09/2012 | 1,220.51 | 94.77 | 1,125.74 | 19,565.54 |
| 51:1 | 07/16/2012 | 1,220.51 | 89.62 | 1,130.89 | 18,434.65 |
| 52:1 | 07/23/2012 | 1,220.51 | 84.44 | 1,136.07 | 17,298.58 |
| 53:1 | 07/30/2012 | 1,220.51 | 79.23 | 1,141.28 | 16,157.30 |
| 54:2 | 08/06/2012 | 1,220.51 | 74.01 | 1,146.50 | 15,010.80 |
| 55:2 | 08/13/2012 | 1,220.51 | 68.75 | 1,151.76 | 13,859.04 |
| 56:2 | 08/20/2012 | 1,220.51 | 63.48 | 1,157.03 | 12,702.01 |
| 57:2 | 08/27/2012 | 1,220.51 | 58.18 | 1,162.33 | 11,539.68 |
| 58:2 | 09/03/2012 | 1,220.51 | 52.86 | 1,167.65 | 10,372.03 |
| 59:2 | 09/10/2012 | 1,220.51 | 47.51 | 1,173.00 | 9,199.03 |
| 60:2 | 09/17/2012 | 1,220.51 | 42.13 | 1,178.38 | 8,020.65 |
| 61:2 | 09/24/2012 | 1,220.51 | 36.74 | 1,183.77 | 6,836.88 |
| 62:2 | 10/01/2012 | 1,220.51 | 31.31 | 1,189.20 | 5,647.68 |
| 63:2 | 10/08/2012 | 1,220.51 | 25.87 | 1,194.64 | 4,453.04 |
| 64:2 | 10/15/2012 | 1,220.51 | 20.40 | 1,200.11 | 3,252.93 |
| 65:2 | 10/22/2012 | 1,220.51 | 14.90 | 1,205.61 | 2,047.32 |
| 66:2 | 10/29/2012 | 1,220.51 | 9.38 | 1,211.13 | 836.19 |
| 67:2 | 11/05/2012 | 1,220.51 | 3.83 | 1,216.68 | -380.49 |
| 68:2 | 11/12/2012 | 1,220.51 | -1.74 | 1,222.25 | -1,602.74 |
| 69:2 | 11/19/2012 | 1,220.51 | -7.34 | 1,227.85 | -2,830.59 |
| 70:2 | 11/26/2012 | 1,220.51 | -12.96 | 1,233.47 | -4,064.06 |
| 71:2 | 12/03/2012 | 1,220.51 | -18.61 | 1,239.12 | -5,303.18 |
| 72:2 | 12/10/2012 | 1,220.51 | -24.29 | 1,244.80 | -6,547.98 |
| 73:2 | 12/17/2012 | 1,220.51 | -29.99 | 1,250.50 | -7,798.48 |
| 74:2 | 12/24/2012 | 1,220.51 | -35.72 | 1,256.23 | -9,054.71 |
| 75:2 | 12/31/2012 | 1,220.51 | -41.47 | 1,261.98 | -10,316.69 |
| | *2012 Totals:* | *64,687.03* | *5,149.75* | *59,537.28* | |
| | *Running Totals:* | *91,538.25* | *11,221.56* | *80,316.69* | |
| 76:2 | 01/07/2013 | 1,220.51 | -47.25 | 1,267.76 | -11,584.45 |
| 77:2 | 01/14/2013 | 1,220.51 | -53.06 | 1,273.57 | -12,858.02 |
| 78:2 | 01/21/2013 | -12,916.91 | -58.89 | -12,858.02 | 0.00 |
| | *2013 Totals:* | *-10,475.89* | *-159.20* | *-10,316.69* | |
| | *Running Totals:* | *81,062.36* | *11,062.36* | *70,000.00* | |

*Last payment decreased by $14,137.42 due to rounding*

*Calculation method: Normal, 360 days per year*

*financial-calculators.com*

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "G"

eRecorded in Philadelphia PA Doc Id: 53183909
03/08/2017 11:49 AM Page 1 of 12 Rec Fee: $252.00
Receipt#: 17-24810
Records Department Doc Code: D
State RTT: $0.00 Local RTT: $4,401.50

# DEED IN LIEU OF FORECLOSURE

THIS DEED IN LIEU OF FORECLOSURE is made the 1st day of March, 2017 between **Juan Tomas Cruz** (hereinafter referred to as the "Grantor") and **G and G Funding Corp.** (hereinafter referred to as the "Grantee").

WHEREAS, to evidence and secure a certain loan from the Grantee to the Grantor, the Grantor executed and delivered to the Grantee a Loan Agreement (Note), dated July 25, 2011, (the "Note") in the principal amount of Seventy Thousand Dollars ($70,000.00) Dollars and a Mortgage to Secure Guaranty, dated July 25, 2011, recorded on August 11, 2011, in the Department of Records of Philadelphia County at Document ID #52378892 (the "Mortgage").

WHEREAS, the Grantee has defaulted under the Note and the Mortgage for, among other things, failure to make payments when due (the "Default").

WHEREAS, the Grantor and the Grantee now desire to avoid the expense and inconvenience of a foreclosure action against the property more particularly described herein (the "Property") and the Grantor and the Grantee seek to resolve the Default by providing for a conveyance of the Property from the Grantor to the Grantee pursuant to this Deed in Lieu of Foreclosure.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Grantor for and in lieu of foreclosure, has granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents does hereby grant, bargain, sell, alien, enfeoff, release and confirm unto the Grantee all that certain real property situate in the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania, as more particularly described as follows:

> ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.
>
> CONTAINING in front or breadth on the said Roosevelt Boulevard twenty-two feet five inches and extending of that width in length or depth Northward between parallel lines at right angles to the said Roosevelt Boulevard one hundred and nine feet to a certain sixteen feet wide driveway which extends westward into Rising Sun Avenue.
>
> TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times hereafter, forever.
>
> BEING No. 189 E. Roosevelt Boulevard.
>
> SITUATE on the Southeast side of Rising Sun Avenue in the Forty-Second Ward of the City of Philadelphia.

BEING the same premises which Margaret McDonald and James McDonald by Deed dated 8/15/05 and recorded 1/20/06 in Document ID# 51395904, grnated and conveyed unto Andres F. Lapaz, in fee.

BEING the same premises which Andres F. Lapaz by his Power of Attorney Carmen Lapaz by Deed, dated March 11, 2006, and recorded on April 7, 2006 in the Department of Records for the County of Philadelphia at Document ID# 51414410 granted and conveyed unto Juan Tomas Cruz, in fee.

TOGETHER with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of Grantor, as well at law as in equity, of, in, and to the same.

TO HAVE AND TO HOLD the said lot or piece of ground described with the buildings and improvements thereon erected and with the hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the Grantee, its successors and assigns, to and for the only proper use and benefit of the Grantee, its successors and assigns forever.

AND the Grantor, for himself and his heirs, representatives, successors and assigns, does covenant, promise and agree, to and with the Grantee and its successors and assigns, by these presents that the Grantor and his heirs, representatives, successors and assigns, all and the singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto Grantee and its successors and assigns, against the Grantor and his heirs, representatives, successors and assigns and against all and every person and persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under it/him/her/them or any of them, shall and will WARRANT and FOREVER DEFEND.

**THIS DEED IN LIEU OF FORECLOSURE IS GIVEN BY THE GRANTOR AS A DEED IN LIEU OF FORECLOSURE AND IS SUBJUCT TO THE PROVISIONS OF THE MORTGAGE. THE EXECUTION, DELIVERY AND RECORDING OF THIS DEED IN LIEU OF FORECLOSURE SHALL NOT CONSTITUTE A SATISFACTION, NOR BE DEEMED TO SATISFY IN WHOLE OR IN PART, ANY PORTION OF THE DEBT EVIDENCED BY THE NOTE AND SECURED BY THE MORTGAGE, NOR DISCHARGE, IN WHOLE OR IN PART, ANY PORTION OF THE MORTGAGE, NOR CONSTITUTE A MERGER OF ALL OR ANY PORTION OF THE MORTGAGE, OR ANY RIGHTS AND REMEDIES OF THE GRANTEE UNDER THE MORTGAGE, ALL OF WHICH ARE HEREBY EXPRESSLY RESERVED TO GRANTEE.**

**GRANTOR ACKNOWLEDGES AND AGREES THAT GRANTOR HAS BEEN GIVEN THE OPPORTUNITY TO OBTAIN THE ADVICE OF INDEPENDENT LEGAL COUNSEL BEFORE EXECUTING THIS DEED IN LIEU OF FORECLOSURE AND DELIVERING THIS DEED IN LIEU OF FORECLOSURE TO GRANTEE.**

**IN WITNESS WHEREOF,** the Grantor has hereunto set his hand and seal the day and year first above written.

WITNESS **Juan Tomas Cruz**

____________________ [signature]
**Juan Tomas Cruz**

COMMONWEALTH OF PENNSYLVANIA :
: ss
COUNTY OF PHILADELPHIA :

On this 1st day of March, 2017, before me, a Notary Public, personally appeared Juan Tomas Cruz, known to me or satisfactorily proven to be the person who executed the above instrument, and who acknowledged that he did sign the above instrument and that said execution of such instrument is his free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Maureen Reilly Montani (SEAL)
Notary Public

The address of the above-named Grantee is:

P.O. Box 132
Norwood, New Jersey 07648

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MAUREEN REILLY MONTANI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 23, 2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MAUREEN REILLY MONTANI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 23, 2018

# ESTOPPEL AFFIDAVIT

Commonwealth of Pennsylvania :
: ss.
County/City of __Philadelphia____________ :

BEFORE ME, the undersigned Notary Public, personally appeared Juan Tomas Cruz ("Affiant"), who, being first duly sworn, deposed and said that:

1. Affiant is the person who made, executed, and delivered that certain Deed in Lieu of Foreclosure ("Deed in Lieu") of even date to G and G Funding Corp. a, Grantee, conveying the following described tract or parcel of real property ("Subject Property"): [property description attached]

2. The Deed in Lieu executed and delivered by Affiant was intended to be, and is, an absolute conveyance of the title to the Subject Property to the Grantee, and was not intended to be, and is not, a mortgage, deed of trust, or security of any kind; that it was Affiant's intention, as the Grantor of the Deed in Lieu, to convey, and by said Deed Affiant did convey, to the Grantee all of Affiant's right, title, and interest in and to the Subject Property; and that Affiant surrenders to the Grantee possession of the Subject Property.

3. Affiant, by executing and delivering the Deed in Lieu, was not acting under any misapprehension as to the effect thereof, and acted freely and voluntarily and not under coercion or duress.

4. Said Deed in Lieu of Foreclosure has not been given as a preference against any of Affiant's other creditors; that at the time said Deed was given, there was no other person, other than the Grantee therein named, interested, directly or indirectly, in the Subject Property; that Affiant is solvent and has no other creditors whose rights would be

prejudiced by such conveyance; and that Affiant is not obligated upon any bond or other mortgage whereby any lien has been created or exists against the Subject Property.

5. The consideration for said Deed in Lieu of Foreclosure was and is the cancellation in full of all debts, obligations, costs, and charges secured by that certain Mortgage on the Subject Property between Tomas Cruz, and G and G Funding Corporation dated 7/25/11 and recorded 8/11/11, [as Instrument No. 52378892. among the land records of the County of Philadelphia, and the release of record of that Deed of Trust; and that, at the time Affiant executed and delivered the Deed in Lieu, Affiant believed, and now believes, that the aforesaid consideration represented the fair value of the Subject Property.

6. Affiant understands and intends that this Affidavit has been made for the protection and benefit of the Grantee, its successors and assigns, and all other parties hereafter dealing with, or who may acquire an interest in, the Subject Property.

7. Affiant hereby expressly agrees to, and will, testify, declare, depose, and/or certify before any competent tribunal, officer, or person, in any case now pending or which may hereafter be instituted, to the truth of each of the particular facts set forth in this Affidavit.

WITNESS the following signature and seal:

Juan Tomas Cruz

The foregoing instrument was acknowledged before me by Juan Tomas Cruz this 1st day of March, 2017.

Maureen Reilly Montani
Notary Public

My Commission expires ____________________

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MAUREEN REILLY MONTANI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 23, 2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MAUREEN REILLY MONTANI, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 23, 2018

REV-183 EX (10-14)

53183909 Page 7 of 12 03/08/2017 11:49 AM

**pennsylvania**
DEPARTMENT OF REVENUE
Bureau of Individual Taxes
PO BOX 280603
Harrisburg, PA 17128-0603

# REALTY TRANSFER TAX STATEMENT OF VALUE

See reverse for instructions.

| RECORDER'S USE ONLY | |
|---|---|
| State Tax Paid | |
| Book Number | |
| Page Number | |
| Date Recorded | |

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value/consideration is not set forth in the deed, (2) the deed is without consideration or by gift, or (3) a tax exemption is claimed. If more space is needed, please attach additional sheets. A Statement of Value (SOV) is not required if the transfer is wholly exempt from tax based on family relationship or public utility easement. However, it is recommended that a SOV accompany all documents filed for recording.

## A. CORRESPONDENT – All inquiries may be directed to the following person:

Name: ~~G and G Funding Corporation~~ Juan Tomas Cruz
Telephone Number: ( )
Mailing Address: 189 East Roosevelt Blvd
City: Philadelphia
State: PA
ZIP Code: 19120

## B. TRANSFER DATA

Date of Acceptance of Document: ~~02/22/2017~~ 3/1/17

Grantor(s)/Lessor(s): Juan Tomas Cruz
Telephone Number:
Mailing Address: 189 East Roosevelt Boulevard
City: Philadelphia
State: PA
ZIP Code: 19120

Grantee(s)/Lessee(s): G and G Funding Corporation
Telephone Number:
Mailing Address: P.O. Box 137
City: Norwood
State: NJ
ZIP Code: 07648

## C. REAL ESTATE LOCATION

Street Address: 189 East Roosevelt Boulevard
City, Township, Borough: City of Philadelphia
County: Philadelphia
School District: Philadelphia
Tax Parcel Number: 421137500

## D. VALUATION DATA

Was transaction part of an assignment or relocation? ☐ Y ☒ N

| 1. Actual Cash Consideration | 2. Other Consideration | 3. Total Consideration |
|---|---|---|
| 1.00 | + 0 | = 1.00 |
| **4. County Assessed Value** | **5. Common Level Ratio Factor** | **6. Fair Market Value** |
| 139,260.00 | X ~~1.00~~ 1.62 | = 141,584.00 |

## E. EXEMPTION DATA – Refer to instructions for exemption status.

| 1a. Amount of Exemption Claimed | 1b. Percentage of Grantor's Interest in Real Estate | 1c. Percentage of Grantor's Interest Conveyed |
|---|---|---|
| $ 141,584.00 | 100 % | % |

**2. Check Appropriate Box Below for Exemption Claimed.**

- ☐ Will or intestate succession. ____________ (Name of Decedent) (Estate File Number)
- ☐ Transfer to a trust. (Attach complete copy of trust agreement identifying all beneficiaries.)
- ☐ Transfer from a trust. Date of transfer into the trust ____________
  If trust was amended attach a copy of original and amended trust.
- ☐ Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)
- ☐ Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)
- ☒ Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of mortgage and note/assignment.)
- ☐ Corrective or confirmatory deed. (Attach complete copy of the deed to be corrected or confirmed.)
- ☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)
- ☐ Other (Please explain exemption claimed.) ____________

**Under penalties of law, I declare that I have examined this statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.**

Signature of Correspondent or Responsible Party: ~~G and G Funding Corporation~~ [signature]
Date: 3/1/17 ~~February 22, 2017~~

**FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.**

Case ID: 200102908

# MORTGAGE TO SECURE GUARANTY

This Mortgage is made and dated July 25, 2011, between, Tomas Cruz with an address at 189 Roosevelt Blvd Philadelphia, Pennsylvania 19122 (individually called the Guarantor) and G and G Funding Corporation a Delaware corporation, with a principal address of 364 East Main Street, Wilmington Delaware 19804 (from now on called the Lender).

The words Guarantor and Lender include all guarantors and all lenders under this Mortgage. The Lender and any other holder of this Mortgage may transfer this Mortgage and Guaranty, which it secures. The word Lender includes (a) the original Lender and (b) anyone who takes this Mortgage by transfer.

1. The Lender is making a loan to Tomas Cruz (Borrower) in the amount of Seventy Thousand Dollars ($70,000.00) (Loan), which said Loan is secured by a Loan Agreement (Note) executed by Borrower on July 25, 2011.
2. The purpose of this Mortgage to Secure Guaranty (Mortgage) is to give the Lender additional security for the Loan made by Lender to Borrower. Guarantor has executed a guaranty agreement (Guaranty) on July 25,2011 as further inducement to Lender to make this loan to Borrower, and has secured this Guaranty with a mortgage in first position against the property known as **189 East Roosevelt Blvd**, Philadelphia, Pennsylvania 19122 (from now on called Property) and which shall include in addition to the land the following: (a) All buildings and other improvements that now are or will be located on the land, (b) all fixtures, equipment, and personal property that now are or will be attached to or used with the land, buildings and other improvements, and (c) all other rights which the Guarantor now has or will acquire with regard to the land.
3. When the Borrower and/or the Guarantor pay all amounts due under the Note and Borrower's Mortgage and/or the Guaranty, respectively the Lender's rights under the Guaranty and this Mortgage shall end. At the request and expense of the Guarantor, the Lender shall cancel this Mortgage of record.
4. The Guarantor makes these promises to the Lender: (a) The Guarantor shall comply with all of the terms of the Guarantor and this Mortgage, (b) the Guarantor shall make all payments due under the Guaranty and this Mortgage, (c) the Guarantor owns and has the right to mortgage the Property to the Lender. The Guarantor shall defend this ownership against all claims, (d) the Guarantor shall pay when due all real estate taxes, assessments, water and sewer charges, and other charges against the Property, (e) the Guarantor shall not claim or be entitled to any credit against the principal or interest under the Borrower's Mortgage and Note and this Mortgage for taxes paid on the Property. The Guarantor shall not claim any deduction from the taxable value of the Property because of this Mortgage, (f) the Guarantor shall maintain hazard insurance on the Property. This insurance must cover loss or damage caused by fire and other hazards normally included under extended coverage insurance. It must also include such other hazard coverage as the Lender may reasonably require. If the Property is in a federal or state flood hazard zone the Guarantor shall maintain flood insurance. The insurance company, agent or broker, amounts of coverage, and forms of all policies must be acceptable to the Lender. The Lender may require that the amount of coverage be the greater of (1) the principal of the Note or (2) the current replacement value of the buildings and other improvements to the extent available. The coverage must be furnished by one insurance company. There can be no coinsurance or sharing of the risk by more than one company. The Guarantor shall deliver the original policies and all renewals to the Lender prior to settlement and additional times if so required by Lender. All policies shall state that the insurance company cannot cancel or refuse to renew without at least 10 days notice to the Lender. They shall include a standard mortgage clause naming the Lender. All insurance proceeds shall be paid to the Lender. In case of loss or damage the Guarantor shall promptly notify the insurance company and the Lender. The Guarantor shall promptly (1) file a proof of loss with the insurance company and (2) settle the claim. If not, the Lender may do so. Following the occurrence of an Event of Default under the Loan Documents the Lender may use the insurance proceeds received to (1) repair and restore the Property or (2) reduce the principal. Prior to the occurrence of an Event of Default, Lender agrees to make the proceeds available for repair and restoration of the Property. The Lender shall use any money left after the repair and restoration to reduce the principal. This shall not change the amounts or due dates of the monthly payments under the Note. The Lender shall pay to the Guarantor any money left after paying the entire principal and interest, (g) the Guarantor shall keep the Property in good repair ordinary wear and tear excepted. The Guarantor shall not damage, destroy or abandon the Property. The Lender may inspect the Property on reasonable notice to the

52378892
Page: 1 of 4
08/11/2011 10:28AM

This Document Recorded
08/11/2011
10:28AM
Doc Code: M

Doc Id: 52378892
Receipt #: 1030716
Rec Fee: 170.00
Commissioner of Records, City of Philadelphia

Guarantor. The Guarantor shall make repairs as may reasonably be required by the Lender, (h) the Guarantor shall not do any of the following to the Property without the written consent of the Lender (which shall not be unreasonably withheld, delayed or conditioned as to clauses (1) or (2) below if the replacement work therefore adds value to the Property): (1) Remove, demolish, or materially alter any buildings or other improvements, (2) remove any fixtures, and (3) give a security interest in any fixtures. If a fixture is destroyed or removed, the Guarantor shall replace it with another of at least equal quality and condition, (i) eminent domain is the right of a government to lawfully condemn and take private property for a public purpose. Fair value must be paid for the taking. The taking may occur either by court order or by deed to the condemning party. If all or any part of the Property is taken by eminent domain, the entire payment shall be given to Lender. Lender shall use any money it deems so appropriate to reduce the principal. This shall not change the amounts or due dates of the monthly payments under the Note. Lender shall pay to the Guarantor any money left after paying the entire principal and interest, (j) in this Mortgage, a lien is a legal claim of another against property for (1) the payment of a debt or (2) the performance of an obligation. This Mortgage is a lien of the Lender against the Property for the security of the Guaranty by Guarantor to repay the Note of Borrower. A superior lien would be entitled to be paid before this Mortgage on a court-ordered sale of the Property. The Guarantor shall not allow a superior lien against the Property, (k) the Guarantor shall not accept rent (if any) from any tenant of the Property for more than one month in advance. In the event Lender declares an the Event of Default under the Guaranty Agreement, Borrower's Mortgage or Note, all leases of Guarantor shall be assigned to Lender, (l) the Guarantor shall obey in all material respects, all laws, rules and ordinances which apply to the Property with the right to contest the imposition or enforcement of any such items so long as such contest is made in good faith, Guarantor has posted adequate security with Lender in its reasonable adequate security with Lender in its reasonable discretion and such contest has the effect of staying any such enforcement of such laws, rules or ordinances as the case may be. The Guarantor shall not use or allow the Property to be used for any illegal purpose.

5. In this Mortgage, escrow is the delivery of money to the Lender for the payment of expenses of the Property. Following an Event of Default, the Guarantor shall pay to the Lender either or both of the following amounts on a monthly basis: (a) 1/12 of the yearly real estate taxes, (b) 1/12 of the yearly hazard insurance premiums. These payments shall be held in escrow by the Lender. They shall be used by the Lender to pay the taxes and the insurance premiums when due. The Lender may adjust these amounts from time to time to reflect changes in the taxes and insurance premiums.

6. The Lender may pay any of the following expenses of the Property when due if the Guarantor does not: (a) real estate taxes, assessments, water charges, and sewer charges, (b) all other charges, (c) hazard insurance premiums, (d) repairs and maintenance, and (e) payments of claims against the Property if necessary to protect the Lender's rights under this Mortgage, unless Guarantor is contesting any such payment in good faith proceedings and in accordance with established procedures, adequate security has been posted with Lender and such contest will not result in any levying of fines against Guarantor or Lender or placing of liens against the Property. All payments made by the Lender shall be paid to the Lender on written demand. Interest shall be charged at twenty four percent (24%) per annum, from the time of payment by the Lender.

7. The Lender has the right, called acceleration, to declare the entire unpaid principal and interest under the Note executed by Borrower, the Borrower's Mortgage or the Guaranty due immediately for any of the following reasons: (a) The failure of the Borrower or the Guarantor to make any payment of principal or interest under the Note within sixty (60) days after its due date, (b) the failure of the Guarantor to keep any other promise in this Mortgage within sixty (60) days after written notice from the Lender or within such reasonable time thereafter if such failure is of a nature that is not capable of being cured within sixty (60) days, guarantor has commenced to cure within such 60 days and diligently prosecutes such cure to completion, (c) any change in the ownership of all or any part of the Property. A change resulting from the death of a Guarantor shall not be considered a change of ownership, (d) the starting of foreclosure or execution proceedings by the holder of any other mortgage or lien on the Property, and (e) the starting of bankruptcy, receivership, or insolvency proceedings by or against a Guarantor which in the case of an involuntary proceeding is not dismissed or stayed within 120 days. The Lender's failure to declare acceleration for any cause shall not prevent the Lender from declaring acceleration for any cause occurring at a later time.

8. If the Lender declares acceleration, the Guarantor shall immediately pay to the Lender the entire unpaid principal and interest due under the Note, the Borrower's Mortgage or the Guaranty. If the Guarantor does not do so, the Lender shall have all rights given to mortgage lenders by law and under this Mortgage, for example: (a) To

enter and take possession of the Property in a lawful way and manage the Property, (b) to ask a court to appoint a receiver of rents (if any) of the Property. The Guarantor consents to the appointment of a receiver, (c) to start a court action known as foreclosure to take away all of the Guarantor's rights in the Property and to have the Property sold. A foreclosure sale is a court-ordered sale of the Property. The proceeds of the sale are used to pay the entire unpaid principal and interest due under the Note, the Borrower's Mortgage and the Guaranty, plus all costs allowed by law, and (d) The court-ordered sale of the Property in the foreclosure action may not bring in enough money to pay the entire amount due under the Note, the Borrower's Mortgage and the Guaranty, plus costs. The Lender may then sue the Guarantor under the Guaranty for the difference. The Lender reserves any rights given by law to sue under the Guaranty before beginning a foreclosure action under this Mortgage.

9. All notices under this Mortgage must be in writing. They may be given by (a) personal delivery, (b) certified mail, return receipt requested, or (c) nationally recognized overnight courier. Each party must accept and claim the notices given by the other. Notices shall be addressed to the other party at the address written at the beginning of this Mortgage. Either party may notify the other of a change of address.

10. This Mortgage is binding on all Guarantors and all those who lawfully succeed to their rights or take their places.

The Guarantor agrees to all of the terms of this Mortgage by signing below. The Guarantor has received a true copy of this Mortgage without charge.

GARANTOR: [signature] DATE: 7-25/11

LENDER: [signature] DATE: 7/28/11

**CERTIFICATE OF ACKNOWLEDGMENT BY INDIVIDUAL**

**State of Pennsylvania, County of Philadelphia.**

I am N. Acevedo III ESQ an officer authorized to take acknowledgments and proofs in this State. I sign this acknowledgment below to certify that it was made before me. On July 25, 2011, Tomas Cruz appeared before me in person. (If more than one person appears, the word "this person" shall include all persons named who appeared before the officer and made this acknowledgment). I am satisfied that this person is the person named in and who signed this Document. This person acknowledged signing, sealing and delivering this Document as this person's act and deed for the uses and purposes expressed in this Document.

[signature]

Attorney at Law

Officer signature above, Print, stamp or type name and title directly beneath

**Record and return to Mortgagee at the address below:**

G and G FUNDING

364 EAST MAIN STREET Wilmington Delaware 19804

[signature]

**ALL THAT CERTAIN** lot or piece of ground with the buildings and improvements thereon erected.

**CONTAINING** in front or breadth on the said the Roosevelt blvd twenty-two feet five inches and exending of that with in length or depth Northward between parallel lines at right angles to the said the Roosevelt boulevard one hundred and nine feet to a certain sixteen feet wide driveway which extends westward into rising sun avenue.

**TOGETHER** with the free and common use, right, liberty and privilege of the aforesaid alley as and for a passageway and watercourse at all times hereafter, forever.

**BEING No. 189 E. Roosevelt Boulevard**

**SITUATE** on the Southeast side of Rising sun avenue in the Forty-second ward of the City of Philadelphia.

**BEING** the same premises which Margaret Mc Donald and James Mc Donald by Deed dated 8/15/05 and recorded 1/20/06 in Document ID# 51395904, granted and conveyed unto Andres F. Lapaz, in fee.

This Document Recorded 04/07/2006 08:51AM State RTT: 0.00 Local RTT: 0.00 Doc Id: 51414410 Receipt #: 489692 Rec Fee: 158.50
Doc Code: D Commissioner of Records, City of Philadelphia

| BOOK NO. | PAGE NO. |
|---|---|
| | |
| DATE RECORDED | |
| CITY TAX PAID | |

# PHILADELPHIA REAL ESTATE TRANSFER TAX CERTIFICATION

Complete each section and file in duplicate with Recorder of Deeds when (1) the full consideration/value is/is not set forth in the deed, (2) when the deed is with consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

**A. CORRESPONDENT — All inquiries may be directed to the following person:**

| NAME | TELEPHONE NUMBER: |
|---|---|
| ~~G and G Funding Corporation~~ Juan Tomas Cruz | AREA CODE ( ) |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 189 East Roosevelt Blvd | Philadelphia | PA | 19120 |

**B. TRANSFER DATA** — DATE OF ACCEPTANCE OF DOCUMENT: **February 22, 2017**

| GRANTOR(S)/LESSOR(S) | GRANTEE(S)/LESSEE(S) |
|---|---|
| Juan Tomas Cruz | G and G Funding Corporation |
| STREET ADDRESS: 189 East Roosevelt Boulevard | STREET ADDRESS: P.O. Box 132 |
| CITY: Philadelphia STATE: PA ZIP CODE: 19120 | CITY: Norwood STATE: NJ ZIP CODE: 07648 |

**C. PROPERTY LOCATION**

| STREET ADDRESS | CITY, TOWNSHIP, BOROUGH | |
|---|---|---|
| 189 East Roosevelt Boulevard | City of Philadelphia | |
| COUNTY | SCHOOL DISTRICT | TAX PARCEL NUMBER |
| Philadelphia | Philadelphia | 421137500 |

**D. VALUATION DATA**

| 1. ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
|---|---|---|
| 1.00 | + 0 | = 1.00 |
| 4. COUNTY ASSESSED VALUE | 5. COMMON LEVEL RATIO FACTOR | 6. FAIR MARKET VALUE |
| 139,200.00 | X ~~1.00~~ 1.02 | = 141,984.00 |

**E. EXEMPTION DATA**

| 1A. AMOUNT OF EXEMPTION | 1B. PERCENTAGE OF INTEREST CONVEYED |
|---|---|
| 0 | 100% |

**2. Check Appropriate Box Below for Exemption Claimed**

- ☐ Will or intestate succession ________________ (NAME OF DECEDENT) ________________ (ESTATE FILE NUMBER)
- ☐ Transfer to Industrial Development Agency.
- ☐ Transfer to agent or straw party. (Attach copy of agency/straw party agreement).
- ☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $ __________.
- ☐ Transfers to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).
- ☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number ________, Page Number ________. Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).
- ☐ Corrective deed (Attach copy of the prior deed).
- ☐ Other (Please explain exemption claimed, if other than listed above.) ________________

*Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.*

| SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY | DATE |
|---|---|
| ~~G and G Funding Corporation~~ [signature] Juan Tomas Cruz | 3/1/17 ~~February 22, 2017~~ |

82-127 (Rev. 6/93) (SEE REVERSE)

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "I"

# RESIDENTIAL LEASE

1. **Parties.** This Residential Lease ("Lease") is made this 1st day of March, 2017, by and between **G AND G FUNDING CORP.** ("Landlord") and **JUAN TOMAS CRUZ** ("Tenant").

2. **Leased Property.** Landlord agrees to rent to Tenant the following property: 189 E. Roosevelt Boulevard Philadelphia, Pennsylvania 19120 (the "Leased Property").

3. **Term.** The term of this Lease ("Term") shall commence on March 1, 2017 ("Commencement Date") and shall end on February 28, 2022 ("Termination Date").

4. **Rent.** The amount of rent is One Thousand Five Hundred Dollars ($1,500.00) each month ("Rent"). Tenant agrees to pay the full amount of the monthly Rent in advance on or before the first (1st) day of each month. In the event that the Commencement Date shall be on a day other than the first (1st) day of a calendar month, the Rent shall be pro-rated for the fractional month between the Commencement Date and the first day of the first full calendar month following the Commencement Date on a per diem basis. Landlord does not have to make demand upon or ask Tenant to pay the rent. Tenant agrees to pay the Rent to Landlord at the following address: P.O. Box 132, Norwood, New Jersey 07648. If Tenant pays the Rent more than five (5) days late, Tenant agrees to pay a late charge equal to five (5%) percent of the amount then due and owing. Tenant agrees to pay $100.00 for any check that is returned from the bank for any reason. In addition, all appropriate late fees will apply. Landlord reserves the right to require all future payments to be in cash, certified check or money order after a check is returned for any reason.

5. **Taxes.** Tenant shall pay as Additional Rent, the following all real estate taxes, mercantile taxes, ad valorem taxes and assessments, general and special, and any other tax imposed upon or levied against real estate, or upon owners of real estate as such rather than persons generally, which are assessed against Landlord, payable with respect to or allocable to the Leased Property. Tenant shall pay to Landlord the Taxes within ten (10) calendar days of the date of Tenant's receipt of an invoice from Landlord setting forth the Taxes for the Property for the current calendar year, as the case may be.

6. **Utility and Other Charges.** Tenant shall be solely responsible for and shall promptly pay, before the imposition of any late fees or penalties, all charges for all utilities consumed at the Leased Property including, without limitation, gas, water, heat, electricity, sewer rents or charges, cable/internet and any other utility used or consumed in the Leased Property. Tenant shall make all appropriate applications to the necessary utility companies to place such utility services for the Leased Property into Tenant' names no later than the Commencement Date and shall pay all required deposits, connection fees and/or charges in connection therewith. Tenant shall provide Landlord with proof of payment of all gas, water and sewer rents and charges within five (5) days of Tenant's payment thereof. Tenant's failure to

promptly pay utility charges and provide Landlord with proof thereof shall be considered a default under this Lease.

7. **Use of the Leased Property.** Tenant agrees to use the Leased Property solely as a residence. Tenant agrees to obey all federal, state and local laws and regulations that relate to the Leased Property and Tenant's failure to do so shall be considered a default hereunder. No one other than Tenant shall reside at the Leased Property during the term of this Lease and Tenant agrees that the maximum number of people who can live in the Leased Property is two. Tenant agrees not to do anything in or around the Leased Property which could harm anyone or damage any property and Tenant further agrees not to store any flammable or dangerous items in or around the Leased Property.

8. **Lead Based Paint.** Tenant is hereby notified that any residential property built prior to 1978 may resent exposure to lead from lead-based paint and may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavior problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. Landlords or agents or the owners of any interest in residential real property are required to disclose to the Tenant the presence or absence of any lead-based paint and/or lead-based paint hazards. A comprehensive lead inspection or risk assessment for possible paint and/or lead-based paint hazards is recommended prior to entering into a lease.

A. Landlord check one:

___X___ Landlord does not know of any lead-based paint or lead-based paint hazards (dangers) on the Leased Property; or

________ Landlord knows that there is lead-based paint, or that there are lead-based paint hazards on the Leased Property. Landlord must explain what Landlord knows about the lead-based paint and hazards, including how Landlord learned that it is there, where it is, and the condition of the painted walls, trim and other surfaces. Landlord must give Tenant any other information Landlord has about the lead-based paint and lead-based hazards.

B. Landlord check one:

___X____ Landlord has no reports or records about lead-based paint hazards on the Leased Property; or

________ Landlord has given Tenant all available records and reports about lead-based paint or lead-based hazards on the Leased Property.

9. **Pets.** Tenant will not keep any pets on any part of the Leased Property without Landlord's written permission.

10. **Smoke Detectors.** Tenant will maintain and test (monthly) any smoke detectors on the Leased Property. Tenant will notify Landlord immediately in writing of any problem, defect, malfunction or failure of the smoke detectors. Tenant agrees to replace the smoke detector(s) battery, if any, if the existing battery becomes unserviceable. Tenant agrees to reimburse Landlord, upon request, for the cost of a new smoke detector, and the installation thereof, in the event the existing smoke detector(s) becomes damaged by Tenant or Tenant's guests or invitees. Tenant acknowledges and agrees that Landlord is not the operator, manufacturer, distributor, retailer or supplier of the smoke detector(s); that Tenant assume full and complete responsibility for all risk and hazards attributable to, connected with, in any way related to the operation, malfunction or failure of the smoke detector(s), regardless of whether such malfunction or failure is attributable to, connected with, or in any way related to the use, operation, manufacture, distribution, repair, servicing or installation of said smoke detector(s). No representations, warranties, undertakings or promises, whether oral or implied or otherwise, have been made by Landlord or employees of Landlord regarding said smoke detector(s) or the alleged performance of same. Landlord neither makes nor adopts any warranty of any nature regarding said smoke detector(s) and expressly disclaims all warranties of fitness for a particular purpose, of habitability, or any and all other expressed or implied warranties. Landlord shall not be liable for damages or losses to person or property caused by (a) Tenant's failure to regularly test the smoke detector(s); (b) Tenant's failure to notify the Landlord of any problem, defect, malfunction, or failure of the smoke detector(s); (c) theft of the smoke detector(s) or its serviceable battery; and/or (d) false alarms produced by the smoke detector(s).

11. **Fire Or Other Damage.** If the Leased Property is damaged (either by fire, flood, or other causes) then:

A. Tenant may continue to live in the livable part of the Leased Property and pay a reduced rent as agreed to by Landlord and Tenant in writing until the damages are repaired; or

B. If it is not possible for Tenant to live in the Leased Property, Tenant must notify Landlord immediately in writing that the Lease has been terminated and Tenant must vacate the Leased Property within twenty four (24) hours. Once the Lease has been terminated, the Landlord will return any advanced Rent to Tenant.

C. If Tenant, Tenant's family or Tenant's guests, licensees or invitees cause the damage by fire or other means, this Lease will remain in full force and effect and Tenant will continue to pay and be responsible for Rent, even if Tenant cannot occupy the Leased Property.

12. **Insurance.** Tenant is responsible for carrying Tenant's own Liability and Contents Insurance policy to insure the contents of the Leased Property against theft or damage. Tenant must have insurance policies providing at least $100,000.00 of property insurance and $100,000.00 of liability insurance to protect Tenant, Tenant's personal property and Tenant's guests or licensees who may be

injured while on the Leased Property. Tenant must maintain this insurance throughout the Term of this Lease. The insurance policies to be maintained by Tenant under this Lease shall name Landlord as an additional insured and shall contain a provision by which the insurers agree that each such policy shall not be canceled or modified except after thirty (30) days written notice to Landlord. Tenant shall provide proof of such insurance to Landlord upon execution of this Lease. Tenant understands that Landlord's hazard insurance does not cover Tenant, Tenant's personal property or Tenant's guests. Landlord is not legally responsible for any injury or damage to Tenant or Tenant's guests that occurs on the Leased Property. Tenant is responsible for any loss due to Landlord caused by Tenant, Tenant's family or Tenant's guests, including attorneys' fees and costs associated with any such loss.

13. **Subleasing and Transfer.** Landlord may transfer this Lease to another landlord and Tenant agrees that this Lease remains the same with the new landlord. Tenant may not assign or transfer this Lease or sublease the Leased Property to another person without Landlord's prior written permission.

14. **Sale of Property.** If the Leased Property is sold, on the date of settlement, Landlord will give Tenant in writing: (1) the name, address, and phone number of the new landlord and (2) the place where Rent is to be paid. Tenant agrees that Landlord may transfer Tenant's advanced rent to the new landlord. Tenant understands that Landlord will have no duties regarding this Lease after the Leased Property has been sold.

15. **Condemnation.** If any part of the Leased Property is taken by the local, state or federal government or other public authority, Landlord will reduce Rent proportionately. If all of the Leased Property is taken or is no longer usable, this Lease will terminate and Tenant will vacate the Leased Property. Landlord will return to Tenant advance Rent. No money paid to Landlord for the condemnation of the Leased Property will belong to Tenant.

16. **Landlord's Entry onto the Leased Property.** The Landlord may enter the Leased Property at all reasonable times to: (1) inspect the Leased Property; (2) make repairs, alterations or improvements; (3) supply services; and (4) show the Leased Property to prospective Tenant, buyers, mortgage lenders, contractors or insurers. After Tenant or Landlord has given notice to terminate this Lease, Landlord may show the Leased Property to future Tenant at all reasonable times. In the case of an emergency, Landlord may enter the Leased Property at any time.

17. **Keys/Locks.** Tenant may not change or add additional locks at any time during the Term.

18. **Tenant' Duties and Care of the Leased Property.** Tenant agrees to accept the Leased Property in its "as-is", "where-is" condition. Tenant and Tenant's guests, licensees and invitees, agree to obey all the laws with respect to the Leased Property. In the event any fine is imposed on Landlord due to Tenant's (or Tenant's family, guests, invitees or licensees) actions or inactions, Tenant agrees to

reimburse Landlord or pay the fine. Any unpaid fines will be considered Additional Rent. Tenant agrees to:

A. Maintain and keep the Leased Property in good condition and clean and safe;

B. Use all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances in a safe and reasonable way;

C. Promptly remove all trash, garbage and debris from the Leased Property as required by Landlord and all federal, state and local laws;

D. Not deliberately or negligently destroy, deface, damage or remove any part of the Leased Property or grounds;

E. Not keep anything in the Leased Property that is highly flammable, dangerous or substantially increases the danger of fire or injury;

F. Not unreasonably disturb the peace and quiet of any neighbors of the Leased Property;

G. Make no alteration, change or improvement to the Leased Property, including, without limitation, painting. Tenant agrees that any alterations, changes or improvements will become part of the Leased Property of the Landlord, unless the Landlord gives written permission to remove them;

H. Pay to repair any damage to the Leased Property, or to any item in or on the Leased Property that Tenant or Tenant' guests, invitees, or licensees cause through a lack of care;

I. Vacate the Leased Property, and leave same in broom clean, re-rentable condition, free from Tenant' personal property, at the termination of this Lease;

J. Notify Landlord immediately of any potentially harmful health or environmental conditions;

K. Obey all federal, state and local laws that relate to the Leased Property; and

L. Remove all accumulations of snow and ice from the sidewalks and walkways adjacent to, or on, the Leased Property in conformity with all federal, state and local laws that relate to the Leased Property.

19. <u>**Tenant Defaults; Notice**</u>. Tenant will default or break this Lease if:

A. Tenant does not pay Rent, Additional Rent or other charges required under this Lease in accordance with the terms and conditions of this Lease;

B. Tenant vacates the Leased Property permanently before the Termination Date (or the expiration of any Renewal Terms) of the Lease;

C. Tenant fails or refuses to vacate the Leased Property at the Termination Date of the Lease;

D. Tenant fails to obtain insurance in accordance with the terms of this Lease;

E. Tenant fails or refuses to do anything Tenant agreed to in this Lease; or

F. Tenant fails to obey any local, state or federal law that related to the Leased Property.

20. **Landlord's Remedies.** If Tenant defaults or breaks this Lease, Landlord's remedies include, without limitation:

A. If Tenant breaks this Lease by not paying Rent or other charges, Tenant agrees that a written notice of five (5) days is sufficient before Landlord can file a lawsuit to evict Tenant. Tenant is waiving or giving up Tenant's right to a longer notice to move out.

B. If Tenant breaks any other term of this Lease, Landlord must give Tenant written notice describing the violation and giving Tenant five (5) days to correct the problem. If Tenant does not correct the problem, Landlord can give Tenant five (5) days' written notice to vacate the Leased Property. If Tenant does not move out, Landlord can file a lawsuit to evict Tenant on the sixth (6th) day. Tenant is waving or giving up Tenant's right to a longer notice to correct problems and to move out.

C. If Tenant defaults under the terms and conditions of this Lease, besides terminating this Lease and evicting Tenant, Landlord may sue Tenant for unpaid Rent and Additional Rent, other damages, losses or injuries as well as Rent for the rest of the Term of this Lease.

D. Tenant specifically agrees that in the event Tenant fail to pay Rent or Additional Rent in a timely manner, or default under any of the terms and conditions of this Lease, Tenant will be responsible for and obligated to pay all reasonable expenses, attorneys' fees, and court costs incurred by Landlord in connection with such default, whether or not any court proceeding is commenced.

E. Tenant understands that if Landlord obtains a judgment against Tenant, Landlord can use the court process to take Tenant's personal property, including, but not limited to, furniture, motor vehicles and money in banks.

21. **Entire Agreement.** This Lease contains the complete agreement between the Landlord and Tenant. This Lease creates legal duties on Landlord and Tenant and anyone who lawfully succeeds to their rights or takes their places. Landlord and Tenant may only modify this Lease by written agreement signed by both Landlord and Tenant.

22. **Holdover Tenant.** If Tenant occupies the Leased Property after the Termination Date or the end of any Renewal Term, Tenant will be considered a holdover Tenant and will be causing Landlord damages. These damages will be equal to three (3) times the monthly Rent plus any lodging expenses of the new occupant, eviction costs and attorney's fees, paid on a daily basis without demand.

23. **Abandonment.** Tenant has abandoned the Leased Property if 1) Tenant has physically vacated the Leased Property, removed substantially all personal property; or 2) a court grants Landlord

possession of the Leased Property. If Tenant abandons the Leased Property while Rent is due and unpaid, Landlord may take possession of the Leased Property and immediately rent the Leased Property to other Tenant.

24. **Captions.** The headings in this Lease are meant only to make it easier to find the paragraphs.

25. **Signatures.** This Lease may be executed and delivered by facsimile transmission or other means of electronic transmission, and any such executed facsimile copy or PDF copy shall be treated as an original.

BY SIGNING THIS LEASE, TENANT AGREES THAT TENANT HAS READ AND UNDERSTOOD ALL OF THE TERMS AND CONDITIONS OF THIS LEASE.

**LANDLORD: G AND G FUNDING CORP.**

By: ______________________

**TENANT: JUAN TOMAS CRUZ**

______________________
Juan Tomas Cruz

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit “H”

# 189 E ROOSEVELT BLVD

Philadelphia, PA 19120-3953

OWNER

## G AND G FUNDING CORP

MAILING ADDRESS

**PO BOX 132**
**NORWOOD NJ**
**07648**

VALUATION HISTORY

| Year | Market Value | Taxable Land | Taxable Improvement | Exempt Land | Exempt Improvement |
|---|---|---|---|---|---|
| 2020 | $104,100 | $15,615 | $88,485 | $0 | $0 |
| 2019 | $103,600 | $15,540 | $88,060 | $0 | $0 |
| 2018 | $139,200 | $20,880 | $118,320 | $0 | $0 |
| 2017 | $139,200 | $20,880 | $118,320 | $0 | $0 |
| 2016 | $139,200 | $17,832 | $121,368 | $0 | $0 |
| 2015 | $139,200 | $17,832 | $121,368 | $0 | $0 |
| 2014 | $139,200 | $17,832 | $121,368 | $0 | $0 |

**Note: Taxable and exempt land values can represent:**

1. **The contributory value of land in relation to the total market value, or**
2. **Where no structure is present, the value of vacant land**

**Consistent with International Association of Assessing Officers (IAAO) standards, the value of an improved parcel is separated into the portion of value attributed to the improvement and the portion of value attributed to the land.**

SALES DETAILS

SALES PRICE: **$70,000** SALES DATE: **2/28/2017**

PROPERTY DETAILS

OPA ACCOUNT: **421137500**
HOMESTEAD EXEMPTION: **No**
DESCRIPTION: **S/D W/D GAR 2.5 STY MASON**

CONDITION: **Average**
BEGINNING POINT: **499'9" E. RISING SUN**
LAND AREA (SQFT): **2,443**
IMPROVEMENT AREA (SQFT): **2,430**
ZONING: **RTA-1**
**Zoning data source:** Planning and Development

CORRECTIONS OR QUESTIONS ABOUT THIS INFORMATION?:

TRASH & RECYCLING

TRASH & RECYCLING DAY: **Thursday** LEAF COLLECTION: **Saturday Bag Dropoff**

SERVICE AREAS

## School Catchment

ELEMENTARY SCHOOL: **Olney ES** MIDDLE SCHOOL: **Olney ES** HIGH SCHOOL: **Aspira CS (Olney)**

## Political

COUNCILMANIC DISTRICT (2016): **7** WARD: **42** WARD DIVISIONS: **4214**

## Public Safety

POLICE DISTRICT: **35** POLICE PUBLIC SERVICE AREA: **352** POLICE DIVISION: **NWPD**

## Districts

PLANNING: **Upper North** LICENSES AND INSPECTIONS (L+I): **NORTH CENTRAL** CENSUS TRACT (2010): **029000** CENSUS BLOCK GROUP (2010): **4** COMMERCIAL CORRIDOR: **n/a**

## Streets

HIGHWAY DISTRICT: **5** HIGHWAY SECTION: **5B** HIGHWAY SUBSECTION: **5B14** STREET LIGHT ROUTES: **33** TRAFFIC DISTRICT: **3** TRAFFIC PM DISTRICT: **3331**

TRASH & RECYCLING DAY: **Thursday** LEAF COLLECTION DAY: **Saturday Bag Dropoff** RECYCLING DIVERSION RATE: **14.1%** SANITATION AREA: **5** SANITATION DISTRICT: **5L**

Filed and Attested by the
Office of Judicial Records
24 JAN 2020 01:09 pm
A. SILIGRINI

# Exhibit "I"

# RESIDENTIAL LEASE

1. **Parties.** This Residential Lease ("Lease") is made this 1st day of March, 2017, by and between **G AND G FUNDING CORP.** ("Landlord") and **JUAN TOMAS CRUZ** ("Tenant").

2. **Leased Property.** Landlord agrees to rent to Tenant the following property: 189 E. Roosevelt Boulevard Philadelphia, Pennsylvania 19120 (the "Leased Property").

3. **Term.** The term of this Lease ("Term") shall commence on March 1, 2017 ("Commencement Date") and shall end on February 28, 2022 ("Termination Date").

4. **Rent.** The amount of rent is One Thousand Five Hundred Dollars ($1,500.00) each month ("Rent"). Tenant agrees to pay the full amount of the monthly Rent in advance on or before the first (1st) day of each month. In the event that the Commencement Date shall be on a day other than the first (1st) day of a calendar month, the Rent shall be pro-rated for the fractional month between the Commencement Date and the first day of the first full calendar month following the Commencement Date on a per diem basis. Landlord does not have to make demand upon or ask Tenant to pay the rent. Tenant agrees to pay the Rent to Landlord at the following address: P.O. Box 132, Norwood, New Jersey 07648. If Tenant pays the Rent more than five (5) days late, Tenant agrees to pay a late charge equal to five (5%) percent of the amount then due and owing. Tenant agrees to pay $100.00 for any check that is returned from the bank for any reason. In addition, all appropriate late fees will apply. Landlord reserves the right to require all future payments to be in cash, certified check or money order after a check is returned for any reason.

5. **Taxes.** Tenant shall pay as Additional Rent, the following all real estate taxes, mercantile taxes, ad valorem taxes and assessments, general and special, and any other tax imposed upon or levied against real estate, or upon owners of real estate as such rather than persons generally, which are assessed against Landlord, payable with respect to or allocable to the Leased Property. Tenant shall pay to Landlord the Taxes within ten (10) calendar days of the date of Tenant's receipt of an invoice from Landlord setting forth the Taxes for the Property for the current calendar year, as the case may be.

6. **Utility and Other Charges.** Tenant shall be solely responsible for and shall promptly pay, before the imposition of any late fees or penalties, all charges for all utilities consumed at the Leased Property including, without limitation, gas, water, heat, electricity, sewer rents or charges, cable/internet and any other utility used or consumed in the Leased Property. Tenant shall make all appropriate applications to the necessary utility companies to place such utility services for the Leased Property into Tenant' names no later than the Commencement Date and shall pay all required deposits, connection fees and/or charges in connection therewith. Tenant shall provide Landlord with proof of payment of all gas, water and sewer rents and charges within five (5) days of Tenant's payment thereof. Tenant's failure to

promptly pay utility charges and provide Landlord with proof thereof shall be considered a default under this Lease.

7. **Use of the Leased Property.** Tenant agrees to use the Leased Property solely as a residence. Tenant agrees to obey all federal, state and local laws and regulations that relate to the Leased Property and Tenant's failure to do so shall be considered a default hereunder. No one other than Tenant shall reside at the Leased Property during the term of this Lease and Tenant agrees that the maximum number of people who can live in the Leased Property is two. Tenant agrees not to do anything in or around the Leased Property which could harm anyone or damage any property and Tenant further agrees not to store any flammable or dangerous items in or around the Leased Property.

8. **Lead Based Paint.** Tenant is hereby notified that any residential property built prior to 1978 may resent exposure to lead from lead-based paint and may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavior problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. Landlords or agents or the owners of any interest in residential real property are required to disclose to the Tenant the presence or absence of any lead-based paint and/or lead-based paint hazards. A comprehensive lead inspection or risk assessment for possible paint and/or lead-based paint hazards is recommended prior to entering into a lease.

A. Landlord check one:

___X___ Landlord does not know of any lead-based paint or lead-based paint hazards (dangers) on the Leased Property; or

_______ Landlord knows that there is lead-based paint, or that there are lead-based paint hazards on the Leased Property. Landlord must explain what Landlord knows about the lead-based paint and hazards, including how Landlord learned that it is there, where it is, and the condition of the painted walls, trim and other surfaces. Landlord must give Tenant any other information Landlord has about the lead-based paint and lead-based hazards.

B. Landlord check one:

___X____ Landlord has no reports or records about lead-based paint hazards on the Leased Property; or

________ Landlord has given Tenant all available records and reports about lead-based paint or lead-based hazards on the Leased Property.

9. **Pets.** Tenant will not keep any pets on any part of the Leased Property without Landlord's written permission.

10. **Smoke Detectors.** Tenant will maintain and test (monthly) any smoke detectors on the Leased Property. Tenant will notify Landlord immediately in writing of any problem, defect, malfunction or failure of the smoke detectors. Tenant agrees to replace the smoke detector(s) battery, if any, if the existing battery becomes unserviceable. Tenant agrees to reimburse Landlord, upon request, for the cost of a new smoke detector, and the installation thereof, in the event the existing smoke detector(s) becomes damaged by Tenant or Tenant's guests or invitees. Tenant acknowledges and agrees that Landlord is not the operator, manufacturer, distributor, retailer or supplier of the smoke detector(s); that Tenant assume full and complete responsibility for all risk and hazards attributable to, connected with, in any way related to the operation, malfunction or failure of the smoke detector(s), regardless of whether such malfunction or failure is attributable to, connected with, or in any way related to the use, operation, manufacture, distribution, repair, servicing or installation of said smoke detector(s). No representations, warranties, undertakings or promises, whether oral or implied or otherwise, have been made by Landlord or employees of Landlord regarding said smoke detector(s) or the alleged performance of same. Landlord neither makes nor adopts any warranty of any nature regarding said smoke detector(s) and expressly disclaims all warranties of fitness for a particular purpose, of habitability, or any and all other expressed or implied warranties. Landlord shall not be liable for damages or losses to person or property caused by (a) Tenant's failure to regularly test the smoke detector(s); (b) Tenant's failure to notify the Landlord of any problem, defect, malfunction, or failure of the smoke detector(s); (c) theft of the smoke detector(s) or its serviceable battery; and/or (d) false alarms produced by the smoke detector(s).

11. **Fire Or Other Damage.** If the Leased Property is damaged (either by fire, flood, or other causes) then:

A. Tenant may continue to live in the livable part of the Leased Property and pay a reduced rent as agreed to by Landlord and Tenant in writing until the damages are repaired; or

B. If it is not possible for Tenant to live in the Leased Property, Tenant must notify Landlord immediately in writing that the Lease has been terminated and Tenant must vacate the Leased Property within twenty four (24) hours. Once the Lease has been terminated, the Landlord will return any advanced Rent to Tenant.

C. If Tenant, Tenant's family or Tenant's guests, licensees or invitees cause the damage by fire or other means, this Lease will remain in full force and effect and Tenant will continue to pay and be responsible for Rent, even if Tenant cannot occupy the Leased Property.

12. **Insurance.** Tenant is responsible for carrying Tenant's own Liability and Contents Insurance policy to insure the contents of the Leased Property against theft or damage. Tenant must have insurance policies providing at least $100,000.00 of property insurance and $100,000.00 of liability insurance to protect Tenant, Tenant's personal property and Tenant's guests or licensees who may be

injured while on the Leased Property. Tenant must maintain this insurance throughout the Term of this Lease. The insurance policies to be maintained by Tenant under this Lease shall name Landlord as an additional insured and shall contain a provision by which the insurers agree that each such policy shall not be canceled or modified except after thirty (30) days written notice to Landlord. Tenant shall provide proof of such insurance to Landlord upon execution of this Lease. Tenant understands that Landlord's hazard insurance does not cover Tenant, Tenant's personal property or Tenant's guests. Landlord is not legally responsible for any injury or damage to Tenant or Tenant's guests that occurs on the Leased Property. Tenant is responsible for any loss due to Landlord caused by Tenant, Tenant's family or Tenant's guests, including attorneys' fees and costs associated with any such loss.

13. **Subleasing and Transfer.** Landlord may transfer this Lease to another landlord and Tenant agrees that this Lease remains the same with the new landlord. Tenant may not assign or transfer this Lease or sublease the Leased Property to another person without Landlord's prior written permission.

14. **Sale of Property.** If the Leased Property is sold, on the date of settlement, Landlord will give Tenant in writing: (1) the name, address, and phone number of the new landlord and (2) the place where Rent is to be paid. Tenant agrees that Landlord may transfer Tenant's advanced rent to the new landlord. Tenant understands that Landlord will have no duties regarding this Lease after the Leased Property has been sold.

15. **Condemnation.** If any part of the Leased Property is taken by the local, state or federal government or other public authority, Landlord will reduce Rent proportionately. If all of the Leased Property is taken or is no longer usable, this Lease will terminate and Tenant will vacate the Leased Property. Landlord will return to Tenant advance Rent. No money paid to Landlord for the condemnation of the Leased Property will belong to Tenant.

16. **Landlord's Entry onto the Leased Property.** The Landlord may enter the Leased Property at all reasonable times to: (1) inspect the Leased Property; (2) make repairs, alterations or improvements; (3) supply services; and (4) show the Leased Property to prospective Tenant, buyers, mortgage lenders, contractors or insurers. After Tenant or Landlord has given notice to terminate this Lease, Landlord may show the Leased Property to future Tenant at all reasonable times. In the case of an emergency, Landlord may enter the Leased Property at any time.

17. **Keys/Locks.** Tenant may not change or add additional locks at any time during the Term.

18. **Tenant' Duties and Care of the Leased Property.** Tenant agrees to accept the Leased Property in its "as-is", "where-is" condition. Tenant and Tenant's guests, licensees and invitees, agree to obey all the laws with respect to the Leased Property. In the event any fine is imposed on Landlord due to Tenant's (or Tenant's family, guests, invitees or licensees) actions or inactions, Tenant agrees to

reimburse Landlord or pay the fine. Any unpaid fines will be considered Additional Rent. Tenant agrees to:

A. Maintain and keep the Leased Property in good condition and clean and safe;

B. Use all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances in a safe and reasonable way;

C. Promptly remove all trash, garbage and debris from the Leased Property as required by Landlord and all federal, state and local laws;

D. Not deliberately or negligently destroy, deface, damage or remove any part of the Leased Property or grounds;

E. Not keep anything in the Leased Property that is highly flammable, dangerous or substantially increases the danger of fire or injury;

F. Not unreasonably disturb the peace and quiet of any neighbors of the Leased Property;

G. Make no alteration, change or improvement to the Leased Property, including, without limitation, painting. Tenant agrees that any alterations, changes or improvements will become part of the Leased Property of the Landlord, unless the Landlord gives written permission to remove them;

H. Pay to repair any damage to the Leased Property, or to any item in or on the Leased Property that Tenant or Tenant' guests, invitees, or licensees cause through a lack of care;

I. Vacate the Leased Property, and leave same in broom clean, re-rentable condition, free from Tenant' personal property, at the termination of this Lease;

J. Notify Landlord immediately of any potentially harmful health or environmental conditions;

K. Obey all federal, state and local laws that relate to the Leased Property; and

L. Remove all accumulations of snow and ice from the sidewalks and walkways adjacent to, or on, the Leased Property in conformity with all federal, state and local laws that relate to the Leased Property.

19. **<u>Tenant Defaults; Notice</u>**. Tenant will default or break this Lease if:

A. Tenant does not pay Rent, Additional Rent or other charges required under this Lease in accordance with the terms and conditions of this Lease;

B. Tenant vacates the Leased Property permanently before the Termination Date (or the expiration of any Renewal Terms) of the Lease;

C. Tenant fails or refuses to vacate the Leased Property at the Termination Date of the Lease;

D. Tenant fails to obtain insurance in accordance with the terms of this Lease;

E. Tenant fails or refuses to do anything Tenant agreed to in this Lease; or

F. Tenant fails to obey any local, state or federal law that related to the Leased Property.

20. **Landlord's Remedies.** If Tenant defaults or breaks this Lease, Landlord's remedies include, without limitation:

A. If Tenant breaks this Lease by not paying Rent or other charges, Tenant agrees that a written notice of five (5) days is sufficient before Landlord can file a lawsuit to evict Tenant. Tenant is waiving or giving up Tenant's right to a longer notice to move out.

B. If Tenant breaks any other term of this Lease, Landlord must give Tenant written notice describing the violation and giving Tenant five (5) days to correct the problem. If Tenant does not correct the problem, Landlord can give Tenant five (5) days' written notice to vacate the Leased Property. If Tenant does not move out, Landlord can file a lawsuit to evict Tenant on the sixth (6th) day. Tenant is waving or giving up Tenant's right to a longer notice to correct problems and to move out.

C. If Tenant defaults under the terms and conditions of this Lease, besides terminating this Lease and evicting Tenant, Landlord may sue Tenant for unpaid Rent and Additional Rent, other damages, losses or injuries as well as Rent for the rest of the Term of this Lease.

D. Tenant specifically agrees that in the event Tenant fail to pay Rent or Additional Rent in a timely manner, or default under any of the terms and conditions of this Lease, Tenant will be responsible for and obligated to pay all reasonable expenses, attorneys' fees, and court costs incurred by Landlord in connection with such default, whether or not any court proceeding is commenced.

E. Tenant understands that if Landlord obtains a judgment against Tenant, Landlord can use the court process to take Tenant's personal property, including, but not limited to, furniture, motor vehicles and money in banks.

21. **Entire Agreement.** This Lease contains the complete agreement between the Landlord and Tenant. This Lease creates legal duties on Landlord and Tenant and anyone who lawfully succeeds to their rights or takes their places. Landlord and Tenant may only modify this Lease by written agreement signed by both Landlord and Tenant.

22. **Holdover Tenant.** If Tenant occupies the Leased Property after the Termination Date or the end of any Renewal Term, Tenant will be considered a holdover Tenant and will be causing Landlord damages. These damages will be equal to three (3) times the monthly Rent plus any lodging expenses of the new occupant, eviction costs and attorney's fees, paid on a daily basis without demand.

23. **Abandonment.** Tenant has abandoned the Leased Property if 1) Tenant has physically vacated the Leased Property, removed substantially all personal property; or 2) a court grants Landlord

possession of the Leased Property. If Tenant abandons the Leased Property while Rent is due and unpaid, Landlord may take possession of the Leased Property and immediately rent the Leased Property to other Tenant.

24. **Captions.** The headings in this Lease are meant only to make it easier to find the paragraphs.

25. **Signatures.** This Lease may be executed and delivered by facsimile transmission or other means of electronic transmission, and any such executed facsimile copy or PDF copy shall be treated as an original.

BY SIGNING THIS LEASE, TENANT AGREES THAT TENANT HAS READ AND UNDERSTOOD ALL OF THE TERMS AND CONDITIONS OF THIS LEASE.

**LANDLORD: G AND G FUNDING CORP.**

By: ______________________

**TENANT: JUAN TOMAS CRUZ**

______________________
Juan Tomas Cruz

# AFFIDAVIT OF NON-SERVICE

| Case: 200102908 | Court: Philadelphia Court of Common Pleas | County: Philadelphia | Job: 4226493 |
|---|---|---|---|
| Plaintiff / Petitioner: Juan Tomas Cruz | | Defendant / Respondent: G & G Funding Corporation, et al | |
| Received by: Legal-Ease Enterprises | | For: Grifo & Chung, LLC | |
| To be served upon: G & G Funding Corporation | | | |

Filed and Attested by the Office of Judicial Records 03 FEB 2020 10:53 am C. JONES PROTHONOTARY FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

I, Jodi L. Broder, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** G & G Funding Corporation, Company: 601 W Susquehanna Ave, Philadelphia, PA 19122

**Manner of Service:** Non-Service

**Documents:** Complaint, Corresponding Exhibits, Confidential Documents Form, and Praecipe for a Lis Pendens

**Additional Comments:**
1) Unsuccessful Attempt: Jan 31, 2020, 12:05 pm EST at Company: 601 W Susquehanna Ave, Philadelphia, PA 19122
Property vacant. Please note that this is a vacant building there is a padlock on the front door and lots of flyers stuffed in the handle.

Jodi L. Broder — 01/31/2020
Jodi L. Broder | Date

Legal-Ease Enterprises
6137 Mulberry Street, #1
Philadelphia, PA 19135

LEGAL-EASE ENTERPRISES, INC.
6137 Mulberry Street, #1
Philadelphia, PA 19135

NAPPS

Philadelphia Association of Professional Process Servers

OC 20 2908 Biondi 2/3

INV# 43725 79.00 1/2

Filed and Attested by the Office of Judicial Records 18 FEB 2020 03:13 pm

# AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| PLAINTIFF(s): JUAN TOMAS CRUZ | COURT TERM & NO.: 200102908 | Philadelphia |
| DEFENDANT(s): BRANDYWINE ABSTRACT COMPANY, LP | Job Number: 4226515 | SERVE BY: |
| SERVE AT: 615 Old Lancaster Road, Bryn Mawr, PA 19010 | XX Civil Action_ Compl<br>o Summons<br>o Writ ______ | o Subpoena<br>o Notice of Real Estate Sale<br>o Other______ |

SPECIAL INSTRUCTIONS: Complaint, Corresponding Exhibits, Confidential Documents Form, and Praecipe for a Lis Pendens

Served and made known to DEF
On the 6th day of FEB, 20 20 at 1:30 o'clock P .M.,
At S/A, County of Delaware,
Commonwealth of Pennsylvania, In the manner described below:

- o Defendant(s) personally served.
- o Adult family member with whom said Defendant(s) reside(s). Relationship is ______
- o Adult in charge of Defendant's residence who refused to give name or relationship.
- o Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- o Agent or person in charge of Defendant's office or usual place of business.
- o ______ an officer of said Defendant company.
- ☒ Other Maureen Montani / REP

DESCRIPTION:
AGE: HEIGHT: WEIGHT: RACE: SEX: OTHER:

On the ______ day of ______, 20____, at ______ o'clock______.M..
Defendant not found because: ☐ Moved ☐ Unknown ☐ No Answer ☐ Vacant ☐ Other
Other: ______

NAME OF SERVER
A. Biondi being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Sworn to & subscribed before me this 11th day of FEB. 2020

Commonwealth of Pennsylvania - Notary Seal
[illegible] GALLAGHER - Notary Public
[illegible] County
My Commission Expires Dec 20, 2023
Commission Number [illegible]6277

Process Server/Competent Adult ______ Sheriff ______

Now, this 24th day of January, 20 20, I do hereby deputize the Sheriff of Delaware County,
To serve this ☐Summons ☒Complaint ☐ Other______ and make return thereof and according to Law.
By (Competent Adult): Joselynn Cook County Sheriff's Check $ 79.00

| | |
|---|---|
| Law Firm: Rosario A. Grifo, Esquire C/O Legal-Ease Enterprises, Inc. | ATTEST: FILED: |
| Attorney's Name: Same as above For: Plaintiff | PRO PROTHY |
| Address: 6137 Mulberry Street, #1, Philadelphia, PA 19135 | January 24th, 2020<br>DATE |
| Telephone: 215-535-1532 Identification: 93928 | |

Case ID: 200102908

LEGAL-EASE ENTERPRISES, INC.
6137 Mulberry Street, #1
Philadelphia, PA 19135

NAPPS Philadelphia Association of Professional Process Servers

OC20-2908

INV# 437262 PR# 4.00 2/2

Filed and Attested by the Office of Judicial Records 18 FEB 2020 ... pm

# AFFIDAVIT OF SERVICE

| | | |
|---|---|---|
| PLAINTIFF(s): JUAN TOMAS CRUZ | COURT TERM & NO.: 200102908 | COUNTY: Philadelphia |
| DEFENDANT(s): MAUREEN REILLY MONTANI | Job Number: 4226515 | SERVE BY: |
| SERVE AT: 615 Old Lancaster Road, Bryn Mawr, PA 19010 | XX Civil Action_ Compl<br>o Summons<br>o Writ ________ | o Subpoena<br>o Notice of Real Estate Sale<br>o Other________ |

SPECIAL INSTRUCTIONS: Complaint, Corresponding Exhibits, Confidential Documents Form, and Praecipe for a Lis Pendens

Served and made known to DEF
On the 6th day of FEB, 20 20 at 1:30 o'clock P .M.,
At 57H, County of Delaware,
Commonwealth of Pennsylvania, In the manner described below:

- ☒ Defendant(s) personally served.
- o Adult family member with whom said Defendant(s) reside(s). Relationship is ________
- o Adult in charge of Defendant's residence who refused to give name or relationship.
- o Manager/Clerk of place of lodging in which Defendant(s) reside(s).
- o Agent or person in charge of Defendant's office or usual place of business.
- o ________ an officer of said Defendant company.
- o Other________

DESCRIPTION:
AGE: HEIGHT: WEIGHT: RACE: SEX: OTHER:

On the ________ day of ________, 20____, at ________ o'clock________.M..
Defendant not found because: ☐ Moved ☐ Unknown ☐ No Answer ☐ Vacant ☐ Other
Other: ________

NAME OF SERVER
A. Biondi being duly sworn according to law, deposes and
Says that he/she is process server herein names; and that the facts herein set forth
Above are true and correct to the best of their knowledge, information and belief.

Process Server/Competent Adult ________ Sheriff ________

Sworn to & subscribed before me this 11th day of FEB 2020

Commonwealth of Pennsylvania - Notary Seal
KENDALL F. GALLAGHER - Notary Public
Delaware County
My Commission Expires Dec 20, 2023
Commission Number 1266277

Now, this 24th day of January, 20 20, I do hereby deputize the Sheriff of Delaware County,
To serve this ☐ Summons ☒ Complaint ☐ Other________ and make return thereof and according to Law.
By (Competent Adult): Joselynn Cook County Sheriff's Check $ 79.00

Law Firm: Rosario A. Grifo, Esquire C/O Legal-Ease Enterprises, Inc.
Attorney's Name: Same as above For: Plaintiff
Address: 6137 Mulberry Street, #1
Philadelphia, PA 19135
Telephone: 215-535-1532 Identification: 93928

ATTEST: FILED:
PRO PROTHY

January 24th, 2020
DATE

Case ID: 200102908

# AFFIDAVIT OF SERVICE

| | | | |
|---|---|---|---|
| Case:<br>200102908 | Court:<br>Philadelphia Court of Common Pleas | County:<br>Philadelphia | Job:<br>4226507 |
| Plaintiff / Petitioner:<br>Juan Tomas Cruz | | Defendant / Respondent:<br>G & G Funding Corporation, et al | |
| Received by:<br>Legal-Ease Enterprises | | For:<br>Grifo & Chung, LLC | |
| To be served upon:<br>Carlos Guzman | | | |

Filed and Attested by the Office of Judicial Records 06 FEB 2020 02:41 pm A. JONES

I, Nadia Tursi, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address: Carlos Guzman, Home: 100 11th Ave Apt 6A, New York, NY 1001

Manner of Service: Mail, Feb 1, 2020, 5:45 pm EST

Documents: Complaint, Corresponding Exhibits, Confidential Documents Form, and Praecipe for a Lis Pendens

Additional Comments:
1) Successful Attempt: Feb 1, 2020, 5:45 pm EST at Home: 100 11th Ave Apt 6A, New York, NY 1001 received by Carlos Guzman. Certified mail. See the attached.

Nadia Tursi — Date: 02/06/2020

Legal-Ease Enterprises
6137 Mulberry Street, #1
Philadelphia, PA 19135

U.S. Postal Service
Certified Mail Receipt

OUTBOUND TRACKING NUMBER
9414 7118 9956 1705 5401 21

RETURN RECEIPT TRACKING NUMBER
9490 9118 9956 1705 5401 01

FEES

| | |
|---|---|
| Postage per piece | $3.400 |
| Certified Fee | $3.550 |
| Return Receipt Fee | $2.850 |
| Total Postage & Fees: | $9.800 |

ARTICLE ADDRESS TO:

Carlos Guzman
100 11th Ave, Apt 6A
New York NY 10011-2856

Postmark
Here

# USPS Tracking®

FAQs >

Track Another Package +

**Tracking Number:** 9414711899561705540121

Remove X

Your item was delivered to the front desk, reception area, or mail room at 5:45 pm on February 1, 2020 in NEW YORK, NY 10011.

## Delivered

February 1, 2020 at 5:45 pm
Delivered, Front Desk/Reception/Mail Room
NEW YORK, NY 10011

Get Updates

Feedback

Text & Email Updates

Tracking History

Product Information

See Less

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

Case ID: 200102908

**GRIFO & CHUNG, LLC**
Rosario A. Grifo, Esquire
Attorney I.D. No. 93928
Paul Chung, Esquire
Attorney I.D. No. 309859
30 South 15th Street, 15th Floor
Philadelphia, PA 19102
(267) 777-9127

Filed and Attested by the Office of Judicial Records 26 FEB 2020 11:50 am

| | | |
|---|---|---|
| JUAN TOMAS CRUZ | : | COURT OF COMMON PLEAS |
| | : | OF PHILADELPHIA COUNTY |
| Plaintiff, | : | CIVIL ACTION -- LAW |
| v. | : | |
| | : | |
| G & G FUNDING CORPORATION, | : | JANUARY TERM, 2020 |
| ET AL | : | |
| Defendants | : | NO. 02908 |

**PRAECIPE TO DISCONTINUE AS TO DEFENDANTS BRANDYWINE ABSTRACT COMPANY, LP & MAUREEN REILLY MONTANI ONLY**

TO THE PROTHONOTARY:

Kindly mark the above-captioned matter discontinued, without prejudice, as to ONLY named Defendants, BRANDYWINE ABSTRACT COMPANY, LP and MAUREEN REILLY MONTANI.

BY: /s/
ROSARIO A. GRIFO, ESQUIRE
Attorney for Plaintiff, Juan Tomas Cruz

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JUAN TOMAS CRUZ**<br>**189 East Roosevelt Boulevard**<br>**Philadelphia, PA 19120**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**G & G FUNDING CORPORATION**<br>**601 Susquehanna Avenue**<br>**Philadelphia, PA 19122**<br><br>**and**<br><br>**CARLOS GUZMAN**<br>**100 11th Avenue, Apt. 6A**<br>**New York, New York, 10011**<br><br>**and**<br><br>**BRANDYWINE ABSTRACT COMPANY, LP**<br>**615 Old Lancaster Road**<br>**Bryn Mawr, PA 19010**<br><br>**and**<br><br>**MAUREEN REILLY MONTANI**<br>**615 Old Lancaster Road**<br>**Bryn Mawr, PA 19010**<br><br>**Defendants** | **CIVIL ACTION**<br><br>**NO.** 20-1220<br><br>FILED<br>MAR 02 2020<br>KATE BARKMAN, Clerk<br>By__________Dep. Clerk |

**CERTIFICATE OF SERVICE**

It is hereby certified that on March 2, 2020, a true and correct copy of the foregoing was

served by U.S. Mail, first class delivery, postage prepaid, upon the following:

Rosario A. Grifo, Esquire
Paul Chung, Esquire
Grifo & Chung, LLC
30 South 15th Street, 15th Floor
Philadelphia, PA 19102

David B. Smith, Esquire

JS 44 (Rev. 02/19) MAK

# CIVIL COVER SHEET

20-cv-1220

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

MAK 20 1220

**I. (a) PLAINTIFFS**
Juan Tomas Cruz

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rosario A. Grifo, Esquire, Grifo & Chung, LLC, 30 South 15th Street, 15th Floor, Philadelphia, PA 19102

**DEFENDANTS**
G & G Funding Corporation and Carlos Guzman

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
David B. Smith, Esquire, Smith Kane Holman, LLC, 112 Moores Road, Suite 300, Malvern, PA 19355

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☒ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☒ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. Sections 1332 and 1446
Brief description of cause:
Complaint in Quiet Title

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*:
JUDGE DOCKET NUMBER

MAR - 2 2020

DATE
03/02/2020
SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAK

DESIGNATION FORM 20 1220

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 189 East Roosevelt Boulevard, Philadelphia, PA 19120

Address of Defendant: 100 11th Avenue, Apt. 6A, New York, NY 10011

Place of Accident, Incident or Transaction: Philadelphia, Pennsylvania

***RELATED CASE, IF ANY:***

Case Number: N/A Judge: N/A Date Terminated: N/A

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 03/02/2020 [signature] Must sign here 59098

*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases *(Please specify):* ______

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* ______
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☑ 9. All other Diversity Cases *(Please specify):* Quiet Title Action

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, David B. Smith, Esquire, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

MAR -2 2020

DATE: 03/02/2020 [signature] Sign here if applicable 59098

*Attorney-at-Law / Pro Se Plaintiff* *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

MAK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

Juan Thomas Cruz : CIVIL ACTION

v.

G&G Funding Corporation and Carlos Guzman : NO. 20 1220

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 03/02/2020 | [signature] | G&G Funding Corporation and Carlos Guzman |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-407-7217 | 610-407-7218 | dsmith@skhlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR -2 2020